**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
January 11, 2012

Lyle W. Cayce
Clerk

No. 11-40107

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

JOSE GUADALUPE ZALETA,

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:10-CR-1236-1

Before JONES, Chief Judge, and HIGGINBOTHAM and SMITH, Circuit Judges.

PER CURIAM:[*]

Jose Guadalupe Zaleta appeals his sentence for transporting an undocumented alien by motorized vehicle for financial gain. He asserts that the district court plainly erred by denying him an opportunity for allocution. We affirm his sentence.

**I.**

Jose Guadalupe Zaleta pleaded guilty to a one-count indictment that charged him with transportation of an undocumented alien for private financial

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

gain, in violation of 8 U.S.C. § 1324 and 18 U.S.C. § 2.  The Pre-Sentence Report ("PSR") noted that one of the undocumented aliens transported by Zaleta reported that the defendant placed him in a compartment/box located underneath the bed in the cabin of the tractor-trailer in which the aliens were transported.  The alien was in the box for approximately thirty minutes before they arrived at the Border Patrol checkpoint where Zaleta was ultimately arrested.  The PSR noted:

> [The alien] said the tractor's running engine made the box hot and he could not communicate with the driver because of the loud noise the engine made during the trip. [The alien] added he felt trapped in the box and would not have been able to extricate himself in case of an accident.

Under § 2L1.1(a)(3) of the *United States Sentencing Guidelines Manual*, Zaleta's base offense level was 12.  Based on the information provided by the alien who had been concealed in the compartment underneath the cabin bed, the PSR recommended that Zaleta's base offense level be increased to 18 for intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person, pursuant to § 2L1.1(b)(6).

Zaleta filed objections to the PSR that included opposition to the § 2L1.1(b)(6) enhancement for reckless endangerment.  At sentencing, defense counsel argued that the alien's statements were not credible, pointing out that the engine was not adjacent to the storage compartment, a fact in tension with the alien's assertion that the compartment was hot.  The district court rejected the defense's argument that the alien would "say anything he could" to curry favor with the government, noting that in another case before the court, aliens in similar circumstances had said that they did not feel endangered or hot. It found that the storage compartment was separated from the air-conditioned cab and sleeping area by a platform and mattress and that "the heat of the motor could go under the cab to the back."  Defense counsel responded that the lid to the storage compartment was propped open by suitcases and asserted that

Zaleta could "speak to the details of how it was." Without offering Zaleta an opportunity to speak, the district court replied that it was "totally unpersuaded" and applied the enhancement. The six-level enhancement, combined with a two-level adjustment for acceptance of responsibility, yielded a total offense level of 16. For Zaleta, who was in criminal history category II, a total offense level of 16 corresponded to an advisory Guidelines range of twenty-four to thirty months imprisonment. The district court imposed a sentence of twenty-four months imprisonment.

## II.

Zaleta argues that by failing to offer Zaleta an opportunity to allocute, the district court violated Rule 32 of the *Federal Rules of Criminal Procedure*.[1] He maintains that the district court's error was prejudicial because it denied him the opportunity to explain why the six-level enhancement for reckless endangerment was not warranted and that the appropriate Guidelines range was eight to fourteen months rather than twenty-four to thirty months.

Because Zaleta did not object on this ground in the district court, we apply plain error review.[2] Zaleta must demonstrate a forfeited error that is clear or obvious, and which affected his substantial rights.[3] If Zaleta establishes those elements, we may exercise our discretion to correct the district court's error "only if the error 'seriously affects the fairness, integrity or public reputation of judicial proceedings.'"[4] Even where a defendant's sentence was at the bottom of the Guidelines range, there is a presumption that a failure to allow the defendant to allocute at sentencing affected the defendant's substantial rights

---

[1] *See* FED. R. CRIM. P. 32(i)(4)(A) ("Before imposing sentence, the court must . . . (ii) address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence.").

[2] *See United States v. Reyna*, 358 F.3d 344, 350 (5th Cir. 2004) (en banc).

[3] *Id.*

[4] *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)).

if "a searching review of the district court record reveals . . . any disputed facts at issue at sentencing, or any arguments raised in connection with sentencing, that if resolved in the defendant's favor would have reduced the applicable Guidelines range or the defendant's ultimate sentence."[5]  However, we have declined "to adopt a blanket rule that once prejudice is found under [this] rule . . . the error invariably requires correction."[6]  Rather, to decide whether we should exercise our discretion to correct the error, we engage in a fact-specific inquiry.[7]

### III.

As the Government concedes, the district court violated Rule 32 by failing to allow Zaleta an opportunity to address the court before it imposed his sentence.  The error was clear or obvious.[8]  We presume that it violated Zaleta's substantial rights because the defense disputed the imposition of a reckless endangerment enhancement.[9]  In light of the particular facts of this case, however, we cannot conclude that the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

Our conclusion with regard to the final element of the plain error standard turns on the particular facts of this case.  Zaleta's situation is distinct from those of the defendants in the Rule 32 plain error cases he cites because of the nature of the prejudice Zaleta claims he suffered.  In the previous cases, the defendant argued that, had the defendant been given the opportunity to allocute, the defendant might have convinced the court to exercise its discretion to issue a lesser sentence within the applicable Guidelines range or to downwardly depart

---

[5] *Id.* at 352.

[6] *Id.*

[7] *See id.* at 352-53.

[8] *See id.* at 350.

[9] *See id.* at 352.

from the Guidelines.[10] Here, Zaleta only argues that his statements might have convinced the trial court that the criteria for a reckless endangerment enhancement under § 2L1.1(b)(6) were not satisfied. The applicability of the reckless endangerment enhancement is a legal and factual question that must be answered in the affirmative or the negative.[11] Zaleta points out that the sentencing at issue was his initial sentencing rather than a revocation hearing and that he was given no opportunity to speak before the district court imposed the sentence, despite counsel's assertion that he could provide more details about the circumstances of the alien's transport relevant to the reckless endangerment enhancement, factors which weigh in favor of us exercising our discretion to remand for re-sentencing.[12] However, Zaleta does not "specif[y] precisely what he would have told the district court" to convince the court that the reckless endangerment enhancement should not apply.[13]

Citing *United States v. Zuniga-Amezquita*,[14] Zaleta notes that the relevant considerations in determining whether a defendant recklessly endangered an alien are (1) availability of oxygen, (2) exposure to extreme temperatures, (3) ability to communicate with the driver, (4) ability to exit the vehicle quickly, and (5) danger in the event of an accident.[15] He asserts that he would have expounded upon the *Zuniga-Amezquita* factors by offering information to show

---

[10] *See United States v. Avila-Cortez*, 582 F.3d 602, 606 (5th Cir. 2009); *United States v. Lister*, 229 F. App'x 334, 338 (5th Cir. 2007) (unpublished); *United States v. Magwood*, 445 F.3d 826, 829-30 (5th Cir. 2006); *Reyna*, 358 F.3d at 352.

[11] *See, e.g.*, *United States v. Rodriguez*, 630 F.3d 377, 380-81 (5th Cir. 2011) (explaining the standard used to determine the propriety of applying a reckless endangerment enhancement under § 2L1.1(b)(6)).

[12] *See Reyna*, 358 F.3d at 352-53.

[13] *Avila-Cortez*, 582 F.3d at 606.

[14] 468 F.3d 886 (5th Cir. 2006).

[15] *See id.* at 889.

that the alien was not deprived of oxygen, was not exposed to extreme temperatures, and could have extricated himself by communicating with the other alien.   But all of the issues on which Zaleta claims he would have expounded were addressed by defense counsel.   While Zaleta asserts that "he could have furnished the district court with facts of greater quantity and quality" than those discussed by defense counsel, he does not identify what new or additional facts he would have offered to demonstrate that the alien was not deprived of oxygen, that the alien was not exposed to extreme hot temperatures, or that the alien was able to extricate himself.

The district court acknowledged the arguments made by the defense on these points, but explained: "I just disagree with the Defense on this argument that the guy enclosed in this place underneath the mattress, even with it propped open, is not recklessly endangered."   The district court credited the alien's report that the compartment was hot from the engine running, that the alien could not communicate with the driver, and that the alien felt trapped and would have been unable to extricate himself in the event of an accident.   Zaleta does not explain how any statement he could have offered would have affected that reasoning.[16]   "[I]f the defendant fails to explain what exactly he or she would have said during allocution that might mitigate the sentence, then the case is one of those 'limited class of cases' in which we will decline to exercise our discretion to correct the error."[17]   Because Zaleta does not specify precisely how his allocution would have affected the district court's analysis of the applicability

---

[16] As the government notes, Zaleta has not argued on appeal that the district court erred in applying the reckless endangerment enhancement – he does not challenge the district court's finding that the facts on record supported application of the enhancement under the governing legal standard.

[17] *Avila-Cortez*, 582 F.3d at 606; *see also Magwood*, 445 F.3d at 830 ("[D]efendants 'have to show some objective basis that would have moved the trial court to grant a lower sentence; otherwise, it can hardly be said that a miscarriage of justice has occurred.'" (citation omitted)).

of the reckless endangerment enhancement,[18] we find that he has not satisfied the fourth and final prong of the plain error standard.

## IV.

Because Zaleta has not demonstrated that the district court's Rule 32 error seriously affects the fairness, integrity or public reputation of judicial proceedings, we AFFIRM the sentence imposed by the district court.

---

[18] *See Avila-Cortez,* 582 F.3d at 606.