United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 10, 2006**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 05-20352

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RUDOLPH MAGWOOD

Defendant-Appellant.

_____

Appeal from the United States District Court
For the Southern District of Texas

_____

Before GARWOOD, HIGGINBOTHAM and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Rudolph Magwood challenges the district court's failure to allow him the opportunity for full

allocution during his sentencing hearing after he violated the terms of his supervised release. Because

there has been no miscarriage of justice, we affirm his sentence.

**FACTS AND PROCEEDINGS**

Magwood, acting with several others, stole checks from the mail, chemically altered them to

remove the handwritten information, forged them, and then presented them to banks to obtain cash.

1

On April 18, 2001, a federal grand jury returned a ten-count indictment charging Magwood with conspiracy, possession of stolen mail, and bank fraud in violation of 18 U.S.C. §§ 371, 1708, and 1344. In June, Magwood pleaded guilty to the indictment, and the district court sentenced him to forty-one months of concurrent imprisonment for each count in the indictment, followed by a five-year term of supervised release on two counts and concurrent three-year terms of supervised release on the remaining counts. In addition, he was ordered to pay $309,130.06 in restitution, and was specially assessed $1,000 under 18 U.S.C. § 3013(a)(2)(A).

Magwood's term of supervised release began on March 12, 2003. He tested positive twice for cocaine use, violating the terms of his supervised release, and was referred to drug treatment. On August 31, 2004, his probation officer submitted a petition to revoke his term of supervised release to the district court, alleging Magwood had violated the terms of his supervised release by: (1) committing a new crime by forging a commercial instrument in violation of Texas state law;[1] (2) failing to report an address change; (3) failing to report to his probation officer in June, July, and September 2004; (4) failing to participate in drug treatment; (5) failing to pay restitution; and (6) failing to pay $900 of his $1,000 special assessment. At the revocation hearing, Magwood admitted all six violations. The district court then revoked Magwood's supervised release and sentenced him to twenty-four months in prison. Magwood appealed his sentence on April 26, 2005, arguing that the sentencing judge denied him an opportunity to allocute before sentencing.

**DISCUSSION**

---

[1]Magwood was convicted of this charge by a Texas state court. It involved the same type of conduct that he was convicted of in federal court: chemically washing checks to take off the payee in order to put some other person's name on it. He was sentenced to, and served, eight months for the violation.

2

## I. Standard of Review

Because Magwood did not object to the district court's failure to allow full allocution at his revocation hearing, this court reviews his claim for plain error only. See FED. R. CRIM. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."); *United States v. Reyna*, 358 F.3d 344, 350 (5th Cir.) (en banc), *cert. denied*, 541 U.S. 1065 (2004) (stating that "errors resulting from a denial of the right of allocation under Rule 32 are subject to plain error review under Rule 52"). This court first asks "whether the district court committed an error that is plain and that affect[s] substantial rights." *Reyna*, 358 F.3d at 350 (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993) (alteration in original) (internal quotations omitted)). If those criteria are met, this court may, in its discretion, correct the forfeited error if the error "'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Id*. (quoting *Olano*, 507 U.S. at 732) (alterations in original).

## II. Analysis

Magwood argues that the district court erred in failing to grant him his right to allocute before sentencing, in violation of FED. R. CRIM. P. 32(i)(4)(A), which provides: "Before imposing sentence, the court must . . . address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence." We first consider whether the district court actually violated Rule 32. If we conclude that the district court did violate Rule 32, we then inquire into whether the error affected Magwood's substantial rights. Finally, if this court concludes the error affected Magwood's substantial rights, we consider whether we will exercise our discretion and correct the error.

## A. Right to Allocution

In order to satisfy Rule 32, the district court must communicate "unequivocally" that the defendant has a right to allocute. *United States v. Echegollen-Barrueta*, 195 F.3d 786, 790 (5th Cir. 1999). It must apply the rule "quite literally" and make "a personal inquiry directed to the defendant." *United States v. Dickson*, 712 F.2d 952, 956 (5th Cir. 1983). "[T]he court, the prosecutor, and the defendant must at the very least interact in a manner that shows clearly and convincingly that the defendant knew he had a right to speak on any subject of his choosing prior to the imposition of sentence." *Echegollen-Barrueta*, 195 F.3d at 789 (internal quotation omitted)(alteration in original).

At the revocation hearing, Magwood was given an opportunity to speak. However, the judge did not "unequivocally" communicate to Magwood that he had the right to allocate to mitigating circumstances before he was sentenced. The judge made a few comments about Magwood's behavior to which Magwood briefly replied. The judge then asked, "What am I supposed to do to get your attention?" Magwood responded, "I don't want to keep living like this. I'm tired of it, being locked up. I really am. I just made a mistake." This exchange is contrasted with Magwood's first sentencing hearing where the judge asked Magwood, "Mr. Magwood, do you have anything you would like to tell me before I sentence you?" Magwood then apologized and attempted to explain his actions. Because no similar opportunity was offered in the revocation hearing, Magwood's right to allocate was violated.

**B. Substantial Rights**

"Ordinarily, in order to establish that an error 'affects substantial rights' . . . , a defendant must establish that the error was 'prejudicial,' i.e. that it 'affected the outcome of the district court proceedings.'" *Reyna*, 358 F.3d at 350 (quoting *Olano*, 507 U.S. at 734). However, this court assumes prejudice for certain violations where it would be difficult for the defendant to prove that

4

such prejudice occurred. *Id.* at 350–51. The *Reyna* court found a Rule 32 violation warranted a presumption of prejudice, stating:

> We . . . conclude that when [the district court fails to comply with Rule 32] without objection by the defendant and the record reveals that the district court did not sentence at the bottom of the guideline range or if the court rejected arguments by the defendant that would have resulted in a lower sentence, we will presume that the defendant suffered prejudice from the error, i.e. that the error affected the defendant's substantial rights.

*Id.* at 353. Magwood was not sentenced either at the bottom of the guideline range, which are now advisory only, or at the statutory minimum, therefore, under *Reyna*, we assume that Magwood's substantial rights were affected.

## C. Court's Discretion to Correct the Error

The denial of the right to allocution "'is not a fundamental defect that inherently results in a complete miscarriage of justice nor an omission inconsistent with the rudimentary demands of fair procedure.'" *Reyna*, 358 F.3d at 352 (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). Therefore, defendants "have to show some objective basis that would have moved the trial court to grant a lower sentence; otherwise, it can hardly be said that a miscarriage of justice has occurred." *Id.* at 356 (Jones, J., concurring) (citing *Johnson v. United States*, 520 U.S. 461, 469 (1997)). The court must still "conduct a thorough review of the record to determine if [it] should exercise [its] discretion to correct the error." *Reyna*, 358 F.3d at 353.

Magwood's sentence for two years in prison was below the three-year statutory maximum for revocation of supervised release.[2] However, it exceeded the sentencing guidelines advisory range

---

[2] Count 10 of Magwood's conviction was bank fraud, a Class B felony. 18 U.S.C. § 1344; 18 U.S.C. § 3559(a)(2). Upon revocation of supervised release for a Class B felony, the court may sentence the defendant to a statutory maximum of three years in prison. 18 U.S.C. § 3583(e)(3).

of four to tenth months imprisonment.[3] The sentencing judge discussed the fact that Magwood was unwilling even to attempt to rehabilitate himself, and that his new crime was for the same type of activity that he was convicted of in 2001. The district court heard arguments from Magwood's counsel, who put forward mitigating factors: counsel stated that Magwood had a loving family to support him in his rehabilitation; that he held a job for a few months after release; and that he was addicted to drugs, which counsel argued was driving his bad behavior. The judge weighed this information, but decided that Magwood had been given several opportunities to reform. However, because Magwood failed to reform himself, the district court decided that two years was an appropriate sentence. On appeal, Magwood does not furnish any information about what he would have allocuted to that might have mitigated his sentence. Indeed, as the government notes, Magwood does not challenge his sentence. He simply challenges the facial violation of his right to allocute. Therefore, we find no miscarriage of justice and decline to exercise our discretion to correct the district court's error. The district court's sentence is AFFIRMED.

---

[3]One of Magwood's violations was committing the new crime of forgery of commercial instruments, a Grade B violation. USSG § 7B1.1(a)(2). Magwood's criminal history category for the offenses for which the supervised release was imposed was I. With a Grade B violation and an original criminal history of I, the advisory revocation range was four to ten months in prison. USSG § 7B1.4(a).