# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 10, 2009

Charles R. Fulbruge III
Clerk

No. 08-41219

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

MANUEL AVILA-CORTEZ

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before JOLLY, DeMOSS, and PRADO, Circuit Judges.

PRADO, Circuit Judge:

Manuel Avila-Cortez ("Avila-Cortez") appeals his sentence, arguing that the district court committed reversible error by denying him the right of allocution before pronouncing his sentence. We agree. We therefore vacate Avila-Cortez's sentence and remand for resentencing.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Avila-Cortez pleaded guilty to one count of being an alien unlawfully found in the United States after having been previously denied admission, excluded, deported, or removed from the country, in violation of 8 U.S.C. § 1326(a) and (b). A probation officer prepared a presentence investigation report ("PSR") and calculated a Sentencing Guidelines range of twenty-four to thirty months'

imprisonment.[1]  At Avila-Cortez's sentencing, the district court determined that Avila-Cortez had received and reviewed a copy of the PSR, and neither Avila-Cortez nor the government raised any objections.  The district court then asked both the government and defense counsel for their views on the appropriate sentence.

The government requested a sentence at the top of the Guidelines range. The government highlighted the dangerousness Avila-Cortez exhibited through his prior DUI conviction (when he allegedly fled by dragging a vehicle that was attached to his vehicle) and mentioned his previous deportation conviction.  The government stated that "it's really only a matter of time until the defendant comes back here and kills somebody, and for the safety of society that's why we recommend the full range in this case."

The district court then asked defense counsel to proceed.  Avila-Cortez's lawyer made the following statement:

> Your Honor, my client was, my client, who is 58 years of age, when he was serving his 21-month sentence in the Bureau of Prisons he did participate in an alcohol program and he wants to continue that when he's in custody as part of this sentence.  He wants to address the issues that he had with alcohol and it's something that came late in his life, as you can see, that it wasn't until he was in his 50's, 51 before he picked up his [first] DWI case, so it's something that came late in his life and it's something that he wants to shed from him. He was punished back in 2006 for that DWI and he got a 90-day sentence because of that behavior.  What the Court has before it is a man who has come back in the United States illegally and he has been punished for it in the past and he has continued to do it, we understand that.  He is also on supervised release, Your Honor, and that case is not before the Court, they haven't filed a petition, but there's going to be another, there's going to be another sentence that's going to be imposed subsequent to this.  And so I'm

---

[1] Specifically, the PSR determined that Avila-Cortez had a total offense level of ten and a criminal history category of VI, resulting in an advisory Guidelines range of twenty-four to thirty months' imprisonment.

asking the Court to consider the lower end of the guideline range in recognition of the fact that he is going to be additionally punished in the future. He wants to work on his drinking problem while he's in custody and he wants to talk to his wife about coming to Mexico to live with him. She is diabetic and he was walking, I think it was through one of the ranches when he was seen, walking his way up to apparently, I think it's in North Dakota. But he's not a mean-spirited person, he's just somebody who wanted to be with his wife. Now she needs to move to Mexico and I think he understands that and that's what he plans for his future, to get her to come down to Mexico.

The district court did not address Avila-Cortez personally. In fact, the only time Avila-Cortez spoke was when he twice said "Yes, sir" in response to whether he had received and reviewed the PSR.

The court then sentenced Avila-Cortez to thirty months' imprisonment. The court explained,

The Court has selected the high end of the guidelines on recognition of the defendant's recidivism. The Court feels that he is just not getting the message. He was even on supervision when this [was] accomplished. The Court feels that the high end of the guidelines adequately addresses the sentencing factors of [18 U.S.C. § 3553], especially the recidivism of the defendant.

Avila-Cortez appeals, contending that the district court improperly failed to allow him to allocute before imposing the sentence.

## II. JURISDICTION AND STANDARD OF REVIEW

This court has jurisdiction pursuant to 28 U.S.C. § 1291, as the district court entered a final judgment after accepting Avila-Cortez's guilty plea and sentencing him to thirty months' imprisonment.

Avila-Cortez did not object to the district court's failure to provide him with an opportunity to allocute. Therefore, our review is for plain error. *United States v. Reyna*, 358 F.3d 344, 350 (5th Cir. 2004) (en banc). Specifically, we must determine whether the district court committed an "'error,'" whether that error is "'plain,'" and whether the error "'affect[s] substantial rights.'" *Id.*

3

(quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)) (alteration in original). If the first three prongs are met, then we can use our discretion to correct the error only if it "'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (quoting *Olano*, 507 U.S. at 732).

## III. DISCUSSION

In *Reyna*, we discussed in detail the manner in which we analyze a defendant's claim that the district court plainly erred by denying the right of allocution. 358 F.3d at 350-53. We first decided that a district court errs when it fails to comply with Federal Rule of Criminal Procedure 32 by not addressing the defendant personally and giving him or her an opportunity to make a statement in mitigation of sentence. *Id.* at 350.[2] We further explained that this error is plain. *Id.* Next, we presumed that such an error affects a defendant's substantial rights unless the district court imposes a sentence at the bottom of the Guidelines range. *Id.* at 352. Finally, having met the first three prongs of plain error review, we noted that reversal is still not automatic, as "[i]n a limited class of cases, a review of the record may reveal, despite the presence of disputed sentencing issues, that the violation of a defendant's right to allocution does not [seriously affect the fairness, integrity, or public reputation of judicial proceedings]." *Id.* That is, we "decline[d] to adopt a blanket rule that once prejudice is found under the rule stated above, the error invariably requires correction." *Id.* Instead, we must "conduct a thorough review of the record to determine if we should exercise our discretion to correct the error." *Id.* at 353.

Avila-Cortez and the government agree that the district court committed an error that was plain by failing to give Avila-Cortez an opportunity to allocute and that we must presume that the error affected Avila-Cortez's substantial

---

[2] "Before imposing sentence, the court must . . . (ii) address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence." FED. R. CRIM. P. 32(i)(4)(A).

rights because the sentence the court imposed was at the top of the Guidelines range. Thus, the only question in dispute is whether we should exercise our discretion to correct the error, that is, whether the error in denying Avila-Cortez the right of allocution "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (internal quotation marks omitted).

As our prior cases note, this is a highly fact-specific inquiry. In *Reyna*, for example, we declined to exercise our discretion to correct the error based on the unique facts of that case. *Id.* During a prior sentencing for Reyna's violation of his supervised release—at which Reyna had the opportunity to allocute—the court gave Reyna the option of immediately serving six months' imprisonment or incurring a twelve month "suspended" sentence. *Id.* at 352. Once Reyna chose the latter option, the district court warned him that if he violated the terms of his supervised release again, the court would automatically sentence him to twelve months' imprisonment. *Id.* Reyna later violated the terms of his supervised release; at the subsequent sentencing, he did not have an opportunity to allocute. *Id.* The court imposed a twelve month sentence, thereby holding Reyna to their initial bargain. *Id.* at 353. We emphasized that Reyna had previously exercised his right of allocution during his original sentencing and at the first sentencing for violating the terms of his supervised release, and at that time the district court notified Reyna of the consequence of violating the terms of his supervised release again. *Id.* At the resentencing the court automatically imposed the very sentence upon which they had previously agreed. *Id.* Under these facts, we held that Reyna's inability to allocute did not seriously affect the fairness, integrity, or public reputation of judicial proceedings. *Id.*

Similarly, in *United States v. Magwood*, 445 F.3d 826, 830 (5th Cir. 2006), we declined to correct a district court's failure to allow allocution when the defendant's counsel put forward mitigating factors relating to the defendant's attempts to rehabilitate himself, the district court weighed this information, and

the defendant failed to provide *any* information on appeal as to what he would have said during allocution to mitigate his sentence. In particular, the district court explained that the defendant had been given several opportunities to reform but had not reformed himself, thus demonstrating that it had considered (but rejected) Magwood's lawyer's statements regarding rehabilitation. *Id.* We found it especially important that "Magwood does not furnish any information about what he would have allocuted to that might have mitigated his sentence." *Id.*

Several of our unpublished decisions also provide guidance. In *United States v. Neal*, 212 F. App'x 328, 332 (5th Cir. 2007) (per curiam) (unpublished), we noted that the defendant "fails to allege any specific facts which, given the entirety of the [sentencing] transcript, particularly the court's focus on Neal's flight and drug use while on release, likely would've convinced the district court to levy a more lenient sentence." In *United States v. Coleman*, 280 F. App'x 388, 392 (5th Cir. 2008) (per curiam) (unpublished), we "decline[d] to exercise our discretion because Coleman ha[d] not pointed to anything that would have moved a reasonable jurist to impose a lesser sentence."

By contrast, in *United States v. Lister*, 229 F. App'x 334, 339 (5th Cir. 2007) (per curiam) (unpublished), we distinguished both *Reyna* and *Magwood* and vacated Lister's sentence. We noted that unlike in *Reyna*, this was Lister's initial sentencing before the district court and therefore that he had not had any previous opportunities to allocute. *Id.* We explained that unlike in *Magwood*, Lister had specified in his appellate brief what he would have included in his allocution statement. *Id.*

In sum, as we noted in *Reyna*, we will "ordinarily remand for resentencing" if a district court commits plain error that affects a defendant's substantial rights by denying the right of allocution. 358 F.3d at 353. However, if the defendant had a prior opportunity to allocute, or if the defendant fails to explain

what exactly he or she would have said during allocution that might mitigate the sentence, then the case is one of those "limited class of cases" in which we will decline to exercise our discretion to correct the error. *See id.* at 352.

During Avila-Cortez's sentencing, his counsel gave general mitigation arguments in an attempt to secure a sentence at the low end of the Guidelines range. He stated that Avila-Cortez had participated in an alcohol-related program during a previous stint in prison, that his criminal difficulties arose when he began having a problem with alcohol at the age of fifty-one, that he will incur an additional sentence for violating the terms of his supervised release based on this conviction, and that he wished to speak with his wife about moving to Mexico with him. The district court did not acknowledge any of these arguments when imposing a sentence, instead focusing only on Avila-Cortez's recidivism. In his appellate brief, Avila-Cortez asserts that if given the right to allocute, he would have "explained how he had tackled, and continued to tackle, his alcohol abuse problem and what plans he and his wife had made to make a permanent life for themselves in Mexico."

We find this case to be quite similar to *Lister*. Much like in *Lister*, and unlike in *Reyna*, this was Avila-Cortez's first appearance before the court, and he was never given an opportunity to allocute. Avila-Cortez explains in his brief what he would have said to the district court had he been given the chance: that he had a specific strategy to address his problem with alcohol and that he was making plans to return permanently to Mexico with his wife. Although Avila-Cortez's counsel summarily referred to this mitigating evidence in his argument, he did not give the detail, expression, or expansion that Avila-Cortez says he would have provided. That is, Avila-Cortez's lawyer did not present to the court the same quantity or quality of mitigating evidence that Avila-Cortez would have given he had been able to allocute. As Justice Frankfurter explained in his plurality opinion in *Green v. United States*, 365 U.S. 301, 304 (1961), "The most

persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself." This case is therefore unlike *Magwood*. Magwood did not provide any indication in his appellate brief as to what he would have said during allocution; Avila-Cortez specifies precisely what he would have told the district court to mitigate his sentence. The district court in *Magwood* expressly rejected the lawyer's statements regarding Magwood's attempts at rehabilitation, but the court here did not even acknowledge Avila-Cortez's mitigating arguments. Moreover, in *Magwood* the district court gave the defendant an opportunity to speak even though it did not "unequivocally" tell Magwood that he had a right to allocution, whereas here the court barely addressed Avila-Cortez at all. Thus, Avila-Cortez was never given any opportunity whatsoever to speak to the court, which is unlike any of the cases in which we have declined to exercise our discretion to correct the error.

The district court therefore failed to follow the Supreme Court's guidance that "trial judges should leave no room for doubt that the defendant has been issued a personal invitation to speak prior to sentencing." *Green*, 365 U.S. at 305. Avila-Cortez himself must be given the opportunity to address the court. *See id*. at 304. Given Avila-Cortez's inability to develop his mitigation evidence, we hold that this is not one of those "limited class of cases" in which the denial of the right to allocution does not seriously affect the fairness, integrity, or public reputation of judicial proceedings. *See Reyna*, 358 F.3d at 352.

## IV. CONCLUSION

The district court should have given Avila-Cortez an opportunity to allocute before imposing a sentence. The failure to do so amounts to plain error that affected Avila-Cortez's substantial rights and seriously affects the fairness, integrity, or public reputation of judicial proceedings. Accordingly, we VACATE Avila-Cortez's sentence and REMAND for resentencing.

VACATED AND REMANDED.