# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
February 7, 2012

No. 11-40383

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee

v.

ANGEL ANTONIO PEREZ,

Defendant–Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:10-CR-00039-001

Before KING, WIENER, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Defendant–Appellant Angel Antonio Perez appeals his twelve-month sentence for violating the conditions of his supervised release, arguing that there were several flaws in his sentencing procedure. We VACATE his sentence and REMAND for resentencing.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This story begins on December 10, 2009, when Defendant–Appellant Angel Antonio Perez ("Perez"), driving a car containing three passengers, was stopped

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-40383

at a routine immigration inspection checkpoint near Laredo, Texas. Perez initially claimed to be a United States citizen, but when he was unable to produce documentation to support his claim, he admitted that he was a citizen of Mexico who lacked permission to be in the United States. On February 8, 2010, Perez pleaded guilty to one count of illegal reentry of a deported alien, 8 U.S.C. § 1326(a), and was sentenced to time served and a one-year term of supervised release, which Perez began to serve on May 18, 2010. Among the conditions of his supervised release, Perez was required to refrain from committing crimes and from reentering the United States illegally, and if Perez were to be deported, he was to immediately report to the nearest United States Probation Office upon his return to the United States.

On February 15, 2011, the United States Probation Officer filed a petition to revoke Perez's supervised release on the basis of five violations of the conditions of his supervised release: (1) a new law violation of possession of a controlled substance; (2) a new law violation of reentry of an alien after deportation; (3) a new law violation of transporting undocumented aliens; (4) a violation of the special condition not to illegally return to the United States; and (5) failure to report to the nearest probation office upon returning to the United States.

The petition laid out the basis for revoking Perez's supervised release. On June 14, 2010, Laredo police officers responded to a report of a burglary in progress at a residence, in which they were advised that there were several male subjects in a white Ford Focus in the driveway. After detaining Perez, the driver of the vehicle, and his three passengers, officers found a chrome drug paraphernalia pipe on the foot board of the rear left passenger's side of the vehicle, as well as a foil paper containing a small quantity of cocaine. Everyone in the car denied owning the chrome paraphernalia. After some questioning, the officers determined that Perez and his three passengers were all illegally present in the United States. Moreover, officers discovered that another individual

No. 11-40383

detained at the scene was allegedly working with Perez in an alien smuggling operation. No further information appears in the record regarding these allegations.

Perez was arrested for possession of a controlled substance and taken to the local jail for processing. He was transferred into federal custody on June 28, 2010, and deported the same day. On January 17, 2011, Perez was located by Border Patrol Agents in El Cenizo, Texas. After a brief interview, the agents learned that Perez was a citizen of Mexico and lacked permission to be in the United States. Perez was arrested and transported to the Laredo South Border Patrol Station for processing. He admitted that he had entered the United States on January 16, 2011, by wading across the Rio Grande River near Laredo, Texas. On January 20, 2011, Perez appeared before a United States Magistrate Judge who sentenced Perez to 180 days in custody for misdemeanor illegal entry, a sentence that Perez would not complete until July 17, 2011.

A revocation hearing was held on March 20, 2011.[1] Perez pleaded not true to the first three allegations—the new crimes of drug possession, illegal reentry following deportation, and the transporting of undocumented aliens—but pleaded true to the fourth and fifth allegations—violation of the special condition not to illegally return to the United States and failure to report to the nearest probation office.[2] The district court reviewed the Judge's Sentencing Options Worksheet, which listed the first three allegations as being Grade B violations of supervised release, under the Sentencing Guidelines's policy statements, which carry a suggested sentencing range of 4 to 10 months, and the final two

---

[1] At the outset of the hearing, the court noted that the district attorney had declined to prosecute Perez for possession of a controlled substance. The court also asked the probation officer about the transportation of aliens offense, but the probation officer lacked any information about that offense.

[2] Perez's plea put him in the peculiar situation of admitting that he illegally returned to the United States in violation of his supervised release, but denying that he illegally returned following deportation. He and his counsel, however, did acknowledge that he had been convicted of misdemeanor illegal entry and was sentenced to 180 days in custody.

No. 11-40383

allegations as being Grade C violations, which have a suggested sentencing range of 3 to 9 months.[3] The court observed that the statutory maximum for these various violations was 12 months.[4]

The court then asked Perez whether he lived in Laredo. Perez responded:

> Yes. Yes, your Honor. I used to reside here. I've been living here the last—I graduated high school here in LBJ, at Lyndon Baines Johnson, here. I've been living ever since I can remember since I was small. I've been living here 23 years of my life.

> Sitting over there in Mexico I have nobody there. I was living on the streets. So it was hard for my family to support me on the other side, too. That's the reason I came back here.

> But since my brother just moved to Mexico, my parents decided for me to stay over there now, like there's no reason for me to be here. I've been doing more jail time like—more jail time than

---

[3] The Sentencing Guidelines provide only policy statements, rather than guidelines, for violations of supervised release. U.S. SENTENCING GUIDELINES MANUAL ch. 7, pt. A, introductory cmt. These policy statements set out three grades of violations for supervised release—Grade A violations, Grade B violations, and Grade C violations. *Id.* at § 7B1.1. Depending on the grade of the violation and the defendant's criminal history, the policy statements suggest various ranges of imprisonment that may be imposed. *Id.* at § 7B1.4. Given Perez's criminal history and the grade of his alleged violations, the Guidelines's policy statements suggest terms of imprisonment of either 3 to 9 months or 4 to 12 months.

[4] Federal law provides that a district court

may, after considering the factors set forth in [18 U.S.C. § 3553] . . . *revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision*, if the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release . . . .

18 U.S.C. § 3583(e) (emphasis added). Perez had previously been charged with illegal reentry following deportation, 8 U.S.C. § 1326(a). This crime carries a statutory maximum of 2 years imprisonment, and is therefore a Class E felony. 18 U.S.C. § 3559(a)(5). Class E felonies carry an authorized term of supervised release of no more than 1 year. 18 U.S.C. § 3583(b)(3). Accordingly, the maximum term of imprisonment that Perez could be sentenced to for violating the conditions of his supervised release was 1 year.

No. 11-40383

spending with my family here.

> I'm tired of doing time. I just don't want to be here no more. There's no point.

The court responded that it knew that Perez did not want to be in jail, but asked whether he wanted to be in Laredo. Perez replied that with his brother's support in Mexico, he could try to make a living there. When asked by the court, Perez confirmed that he was still serving his previous sentence.

The prosecutor then informed the court, "I think we're—we can go forward on the two Grade B [violations], the number two and number three here today, too." The prosecutor explained that two officers were ready to testify against Perez and that they had brought certified copies of documents regarding the offenses.

The court then asked defense counsel, "Do you want to say anything on his behalf?" Defense counsel then said:

> Your Honor, yes on his behalf.

> I think the time served sentence that he got, you know, was by Judge Head amounted to about a five month sentence. Obviously, he's already received more than that on the misdemeanor case and is now looking at additional time.

> He was one years old when he came to the United States when his parents brought him. That's, as he's explained to the Court, his whole motivation. And it's unfortunate that he can't reside here. [B]ut he does [have] his brother now residing over there who can help him stabilize his life.

> So we're asking the Court to take that into consideration, [and] impose a reasonable sentence.

The court then sentenced Perez:

> Well Mr. Perez, I find that you have violated the term of your 1 year supervised release in [this case]. You have pled true to violations number four and five. And even though Miss Rabe is ready to prove up the first three violations, the most that I can give you under the statute is 12 months.

> And that's what I'm going to do. I'll revoke your supervised release. I'll sentence you to 12 months in custody. You will not

recommence your TSR. You're done with this case.

Next time you're back, which I'm sure you will be, they'll prosecute you again. And you've got the criminal history there on your record. All of this other information that was in this report that was given to me will be in there as well, that you continue to be involved in criminal activity when you come over here. So your sentence will just keep getting worse. But you're done with this case. You serve one more year in custody, and you're done with this case.

You have 14 days to appeal the sentence. It would be a free appeal because you have a Court-appointed attorney. There was a Special Assessment that was imposed initially, so that would just carry on into the next case. In addition to—yeah, but then you're done with the case. You're done.

Perez's counsel observed that this sentence was a departure from the Guidelines for a Grade C violation and asked for the basis of the upward departure. The court explained:

[It] [w]ould be what I just explained, that he continues to be involved in criminal activity, that I think that's an appropriate sentence considering his background, and considering the information that was contained in the Form 12 [i.e., the petition to revoke supervised release], and considering the allegations that he's pled true to, and also considering that he was prosecuted for a misdemeanor illegal entry offense, and everything else that's contained in his Presentence Investigation Report. That's why I gave him the statutory max.

Defense counsel attempted to speak: "The criminal activity are the Grade B violations, your Honor, that the—" But the court interjected: "Everything that's contained in the report, Mr. Saenz. Thank you, you're remanded." Defense counsel also later requested that the court rule that the twelve-month sentence run concurrently with the six-month sentence Perez was already serving for misdemeanor illegal entry. The court rejected his request and stated that the sentences would run consecutively.[5]

---

[5] The court explained its decision as follows:

As I indicated earlier, he was here June 14th, 2010. They sent him back

No. 11-40383

Perez now appeals his twelve-month sentence. He argues that his sentence is procedurally unreasonable for three reasons. First, the district court denied Perez his right to allocution. Second, the district court relied on clearly erroneous factual findings and materially erroneous assumptions in imposing the sentence by basing its sentencing decision on the allegations contained in the petition to revoke his supervised release. Third, the district court failed to adequately explain the sentence. Perez also appeals the sentence as being substantively unreasonable because it is greater than necessary to effectuate the purposes of sentencing.

## II. DISCUSSION

### A. Denial of the Right to Allocute

We begin with the question whether Perez was denied his right to allocute. Perez did not object to the district court's alleged denial of this right and so we review only for plain error. *See* FED. R. CRIM. P. 52(b); *United States v. Reyna*, 358 F.3d 344, 350–51 (5th Cir. 2004) (en banc). "To prevail, [Perez] must establish: (1) an error; (2) that is clear and obvious; and (3) that affected his substantial rights." *United States v. Hernandez–Martinez*, 485 F.3d 270, 273 (5th Cir. 2007) (citing *United States v. Olano*, 507 U.S. 725, 732–34 (1993)). As we have previously explained, the denial of the right to allocution "'is not [necessarily] a fundamental defect that inherently results in a complete miscarriage of justice nor an omission inconsistent with the rudimentary demands of fair procedure.'" *Reyna*, 358 F.3d at 352 (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). Accordingly, we have "decline[d] to adopt a blanket rule that once prejudice is found under the rule stated above, the error

---

June 28th, 2010, came back again 7 months later, January 17, 2011. [Until] June 28, 2010, we didn't have the ability to see him. It wasn't until he returned that we saw him again. And that's when he received the new law violation, the misdemeanor illegal entry.

So because of that I think the 12 month sentence is appropriate, and that it's consecutive to the six months that's already given. And then he's done with that case. He's done with [this case] after that.

No. 11-40383

invariably requires correction." *Id.* Thus, even if Perez can establish the previous three conditions, we will exercise our discretion to notice the forfeited error only if "the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Olano*, 507 U.S. at 732 (internal quotation marks, alteration, and citation omitted). "[I]f the defendant had a prior opportunity to allocute, or if the defendant fails to explain what exactly he or she would have said during allocution that might mitigate the sentence, then . . . we will decline to exercise our discretion to correct the error." *United States v. Avila–Cortez*, 582 F.3d 602, 606 (5th Cir. 2009) (citation omitted). To prevail, Perez must demonstrate "some objective basis that would have moved the trial court to grant a lower sentence. . . . On appeal, [Perez must] furnish . . . information about what he would have allocuted to that might have mitigated his sentence." *United States v. Magwood*, 445 F.3d 826, 830 (5th Cir. 2006).

Perez argues that while the district court questioned him on several topics at the revocation hearing, it was plain error for the court not to give him an opportunity to speak on any topic of his choosing. He is correct. The first two prongs of the plain error analysis are met; the district court committed error by not allowing Perez to speak on any topic of his choosing, and that error was clear and obvious. *See* FED. R. CRIM. P. 32(i)(4)(A)(ii) ("Before imposing sentence, the court must . . . address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence . . . ."). We have made clear:

> To comply with Rule 32, it is not enough that the sentencing court addresses a defendant on a particular issue, affords counsel the right to speak, or hears the defendant's specific objections to the presentence report. . . . [T]he court, the prosecutor, and the defendant must at the very least interact in a manner that shows clearly and convincingly that the defendant knew he had a right to speak on any subject of his choosing prior to the imposition of sentence.

No. 11-40383

*United States v. Echegollen–Barrueta*, 195 F.3d 786, 790 (5th Cir. 1999) (internal quotation marks and citations omitted). By failing to unequivocally communicate to Perez that he had the right to allocute, the district court committed a clear and obvious error. *Id.* at 791.[6]

The third prong of the plain error analysis—harm to the defendant's substantial rights—is also met. As we explained in *Magwood*, when "the record reveals that the district court did not sentence at the bottom of the guideline range . . . , we will presume that the defendant suffered prejudice from the error, i.e. that the error affected the defendant's substantial rights." *Magwood*, 445 F.3d at 829 (quoting *Reyna*, 358 F.3d at 353). Perez's sentence above the Guidelines range meets this standard, and so we presume that he suffered prejudice.

We now turn to whether we should exercise our discretion to correct the error. The Government does not argue that Perez was given a previous opportunity to allocute. *Avila–Cortez*, 582 F.3d at 606; *see Reyna*, 358 F.3d at 352–53 (declining to exercise discretion to correct error when defendant had previously allocated before the same district judge). We thus determine if on appeal, Perez can "show some objective basis that would have moved the trial

---

[6] The Government asks us to draw a distinction between the allocution guaranteed in Rule 32 and that guaranteed in Rule 32.1, which applies in revocation hearings. *See* FED. R. CRIM. P. 32.1(b)(2)(E) ("[At a revocation hearing,] [t]he person is entitled to . . . an opportunity to make a statement and present any information in mitigation."). To support its position, the Government points to cases from sister circuits distinguishing the protections afforded by these two provisions. *See United States v. Nanez*, 419 F. App'x 880, 882–83 (10th Cir. 2011); *United States v. Robertson*, 537 F.3d 859, 862 (8th Cir. 2011). Other circuits, however, have concluded that these Rules create an identical right to allocution. *United States v. Carruth*, 528 F.3d 845, 846–47 (11th Cir. 2008); *United States v. Pitre*, 504 F.3d 657, 661–62 (7th Cir. 2007). Our circuit has not yet addressed the similarities or differences between these Rules, and so while Perez cites both Rules in his brief, we rest our holding on Rule 32's guarantee of allocution and do not decide this question. We do note, however, that several unpublished decisions in our circuit have apparently treated these Rules as interchangeable in the guarantees they provide, relying on Rule 32 precedent to guide their decisions regarding Rule 32.1. *See United States v. Legg*, 439 F. App'x 312, 313 (5th Cir. 2011) (unpublished); *United States v. Dolenz*, 413 F. App'x 703, 703–04 (5th Cir. 2011) (unpublished); *United States v. Jimenez–Laines*, 354 F. App'x 889, 894–95 (5th Cir. 2009) (unpublished).

court to grant a lower sentence." *Magwood*, 445 F.3d at 830 (internal quotation marks and citation omitted).

During the course of sentencing, the district court referred to Perez's criminal history and his repeated illegal reentry into the United States, as well as the fact that his "continue[d] . . . involve[ment] in criminal activity" would result in harsher and harsher sentences for subsequent violations. When asked about the basis for the upward departure, the district court explained its decision in these terms: "[The basis for the upward departure] [w]ould be what I just explained, that he continues to be involved in criminal activity, . . . and considering the information that was contained in the [petition to revoke supervised release]."[7] Perez argues in his appellate brief, convincingly we think, that the opportunity to allocute would have permitted Perez to at least point out that there was no evidence to support at least two of the allegations in the petition to revoke supervised release. That might have "undermined or altered" the district court's reasons for its sentence. *United States v. Coleman*, 280 F. App'x 388, 392 (5th Cir. 2008) (unpublished).

As Perez has "furnish[ed] . . . information about what he would have allocuted to that might have mitigated his sentence," we find that the denial of Perez's right to allocute resulted in a miscarriage of justice. *Magwood*, 445 F.3d at 830. Accordingly, we exercise our discretion to correct the plain error of the district court and vacate his sentence. Because certain other issues could recur on remand, we also briefly consider Perez's arguments for the sake of guidance to the district court.

## B. Reliance on the Petition to Revoke Supervised Release

Perez also argues that the district court improperly relied on the allegations in the petition, resulting in a determination based on clearly erroneous factual findings and materially erroneous assumptions. There are two

---

[7] As we explain below, it is difficult to determine the extent to which the district court was relying on these allegations in sentencing Perez.

No. 11-40383

questions here.    First, whether allegations made in a petition to revoke supervised release are sufficient for establishing a violation of a condition of supervised release.    Second, if such allegations are insufficient, whether the district court's comments indicate that it relied on them in sentencing Perez.

As Perez arguably attempted to object on this ground before the district court,[8] we review the prison sentence imposed on him by the revocation of supervised released under the "plainly unreasonable" standard.    *United States v. Miller*, 634 F.3d 841, 843 (5th Cir. 2011).[9]    Under this standard, "we [first] evaluate whether the district court procedurally erred before we consider 'the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard.'"    *Id.* (quoting *United States v. Brantley*, 537 F.3d 347, 349 (5th Cir.

---

[8] In fact, Perez's counsel attempted to raise this issue before the district court by stating that "[t]he criminal activity are the Grade B violations, your Honor, that the—" but was interrupted by the court.    While defense counsel was unable to articulate his entire position, we believe that this "objection [was] sufficiently specific to alert the district court to the nature of the alleged error and to provide an opportunity for correction."    *United States v. Neal*, 578 F.3d 270, 272 (5th Cir. 2008).

[9] In the wake of *United States v. Booker*, 543 U.S. 220 (2005), it was unclear whether a "reasonable" or "plainly unreasonable" standard of review should apply to revocation sentences.    *See Hernandez–Martinez*, 485 F.3d at 273.    This confusion arose from uncertainty over how to apply *Booker*'s instruction that appellate courts should review criminal sentences which are no longer controlled by the Sentencing Guidelines for reasonableness, *Booker*, 543 U.S. at 260–61, in the context of revocation sentences, where the Guidelines have always been advisory.    *Hernandez–Martinez*, 485 F.3d at 273–74.    In *United States v. Hernandez–Martinez*, we concluded that while there were persuasive reasons to adopt the "plainly unreasonable" standard, the sentence at issue could be upheld under either standard and so we did not decide which standard applied.    *Id.*    In *United States v. Miller*, we went on to "adopt the ['plainly unreasonable'] standard discussed in *Hernandez–Martinez*."    *Miller*, 634 F.3d at 843.    There has remained some lingering uncertainty even after *Miller* regarding which standard applies, though.    *See United States v. Breland*, 647 F.3d 284, 286–87 (5th Cir. 2011) ("We have not yet decided which of the above standards of review apply in the wake of *Booker* . . . and we decline to do so today because [defendant]'s sentence passes muster under either standard.") (footnote and citation omitted).    Under the rule of orderliness, we are bound by the decision in *Miller*, see *United States v. Dial*, 542 F.3d 1059, 1060 (5th Cir. 2008) (per curiam), and so we adopt the "plainly unreasonable" standard of review for revocation sentences.    We also note in passing that while the "plainly unreasonable" standard is more deferential than the "unreasonable" standard, see *Miller*, 634 F.3d at 843, "[c]ourts have also observed that because [the *Booker* reasonableness] test is substantially equivalent to the plainly unreasonable standard, little has changed post-*Booker*."    *Hernandez–Martinez*, 485 F.3d at 273.

2008)).

A district court procedurally errs when it bases a sentence on clearly erroneous facts. *Gall v. United States*, 552 U.S. 38, 51 (2007). We determine whether a factual finding is clearly erroneous by determining if it is plausible in light of the record read as a whole. *United States v. Calbat*, 266 F.3d 358, 364 (5th Cir. 2001) (citation omitted). However, in reading the record as a whole, we note that "the bare allegations contained in [a] petition [to revoke supervised release] . . . [do not] constitute evidence in any sense." *United States v. Standefer*, No. 95-50043, 1996 WL 46805, at *3 (5th Cir. Jan. 15, 1996) (unpublished).

Here, the Government stated that it was prepared to "go forward on the two Grade B [violations]"—the transportation of undocumented aliens and the possession of a controlled substance violation—with two officers ready to testify as to the events in question, as well as documentation related to the incident. However, the district court declined to hear any of this evidence. Accordingly, the absence of evidence to support the allegations in the petition to revoke supervised release would render reliance on them improper. This resolves the first question.

As regards the second question, it is unclear to what extent the district court relied on the petition's allegations in sentencing Perez. The court initially may have referred to the allegations when telling Perez that by "continu[ing] to be involved in criminal activity when you come over here," "[n]ext time you're back . . . they'll prosecute you again." The court again may have referred to the allegations when explaining the basis for its upward departure, noting that Perez "continues to be involved in criminal activity" and giving "consider[ation] [to] the information that was contained in the [petition to revoke supervised release]." It is difficult to determine whether these statements, taken in context, meant that the court imposed Perez's sentence on the basis of the alleged new law violations for transportation of undocumented immigrants and the

possession of a controlled substance, or whether the court considered only Perez's admitted violations. If the court considered only Perez's admitted violations, then there was no error. However, if the court relied on the allegations in the petition, without hearing the government's available evidence, when sentencing Perez, then this was a procedural error because the allegations alone were not evidence. Given that we vacate Perez's sentence on the basis of the denial of his right to allocute, we do not decide whether the court relied on the allegations, but we note that on remand, the district court should clearly indicate which violations of the conditions of supervised release underlie Perez's sentence.[10]

## C. Failure to Adequately Explain the Sentence

Perez also appeals his sentence on the ground that the district court committed procedural error by failing to adequately explain his sentence. As we vacate Perez's sentence, we need not address this argument.

## III. CONCLUSION

For the reasons stated above, we VACATE Perez's sentence and REMAND for resentencing.

---

[10] Our decision not to reach this issue also means that we do not consider the substantive reasonableness of Perez's sentence. Perez's argument is that the district court may have given significant weight to an improper factor—the unproven allegations in the petition to revoke his supervised release—resulting in a substantively unreasonable sentence. *United States v. Smith*, 440 F.3d 704, 708 (5th Cir. 2006). This argument is very similar to Perez's argument that the district court's reliance on the allegations would have constituted procedural error, such that a finding that the district court did rely on the petition's allegations in sentencing Perez would indicate both procedural error and substantive unreasonableness. Since we vacate Perez's sentence because the district court denied him the right to allocute, we do not reach this issue either.