REVISED February 24, 2017

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-40231

United States Court of Appeals
Fifth Circuit

**FILED**
February 23, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

DANIEL AGUIRRE-ROMERO, also known as Daniel Romero-Aguirre,

      Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:15-CR-885-1

Before WIENER, DENNIS, and HAYNES, Circuit Judges.

PER CURIAM:*

      Daniel Aguirre-Romero challenges his 71-month sentence for illegally reentering the country after having been deported, arguing that the district court deprived him of his right to allocute.  Because we find that the district court plainly erred and this error seriously affects the fairness, integrity, or

---

      * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

public reputation of the proceedings, we exercise our discretion to correct the error and VACATE Aguirre-Romero's sentence and REMAND for resentencing.

I

Aguirre-Romero pleaded guilty, without the benefit of a plea agreement, to illegally reentering the country after having been deported, in violation of 8 U.S.C. § 1326. The presentence report (PSR) assessed Aguirre-Romero a total offense level of 21, which included a 16-level enhancement because he had previously been convicted of a drug-trafficking offense, and placed him in criminal history category IV, resulting in a guidelines range of 57 to 71 months.

The PSR also described Aguirre-Romero's history of domestic violence. His criminal history included convictions for injury to a child relating to his infliction of head injuries and rib fractures to his three-month-old daughter. According to statements made to investigators by Jahaira Alejandra Garcia, the child's mother and Aguirre-Romero's common-law wife, the child was left in Aguirre-Romero's care one afternoon while Garcia went to a nearby store to purchase milk and water. Soon after she returned, the baby cried out in pain, was having difficulty breathing, was unresponsive, and was limp. During the same interview, Garcia also reported that Aguirre-Romero once threw the child across the bed, causing her to hit the bedpost. Aguirre-Romero denied any wrongdoing. He explained that he previously allowed an undocumented couple to reside at his apartment for two and a half weeks, and on one occasion his child was left with them while he ran errands with his wife. He stated that the child began to show discomfort after she was left in their care.

In her interview with the probation officer as part of the sentencing proceedings in this case, Garcia recanted the statement she provided to officers at the time and provided a similar version of events to the one that Aguirre-Romero provided during questioning. Moreover, she described Aguirre-

Romero as a "good father" and reported that prior to his arrest, she would leave their two younger children with him in Nuevo Laredo, Mexico, while she worked and their two older children attended school in Laredo, Texas. She denied that Aguirre-Romero was abusive to her, explaining that he had "only slapped her on a few occasions" when "she was being impertinent in the presence of his friends." Garcia's mother, however, reported that she believed that Garcia was the victim of domestic violence; she stated that she had seen Garcia with bruises and other injuries. She further explained that Aguirre-Romero's former common-law wife had ended their relationship "because of domestic violence issues." The PSR also noted that Aguirre-Romero had been arrested for making a terroristic threat after threatening to assault his former common-law wife.

The district court began the sentencing hearing by reviewing the PSR's guidelines calculation and Aguirre-Romero's criminal history. Aguirre-Romero represented that the PSR was correct. Defense counsel explained to the court that, after Aguirre-Romero was deported, he remained in Mexico for three years and held a job. He lived there with Garcia and their children and helped his wife care for the family. The court asked counsel several follow-up questions regarding Aguirre-Romero's convictions for injury to a child and the effect they had on his family life, noting that he had almost killed his daughter, listing the injuries that she suffered, and seeming incredulous in the face of counsel's representation that Aguirre-Romero was a good father. The court also recounted the rest of Aguirre-Romero's criminal history, including his prior illegal entries and the charge for making a terroristic threat, noting that he had nearly enough criminal history points to place him in a higher category and characterizing his record as "very serious" and "very troubling." Counsel continued to emphasize that Romero-Aguirre and his wife worked hard to make their marriage last, Aguirre-Romero had not returned to the United

States for three years, and he eventually returned so that he could make more money and better support his family.

Aguirre-Romero also engaged in a colloquy with the court regarding his convictions for injury to a child, representing that he had the support of his family, he did not hurt his daughter, he believed he was pleading guilty only to endangering a child, the other people living with them were responsible for his daughter's injuries, and he was a loving father.

Defense counsel then asked the court to consider a sentence at the low end of the guidelines range or to vary downward on the basis that the drug conviction that increased Aguirre-Romero's offense level by 16 levels was 15 years old and was committed when he was 24 years old. The government asked for a sentence at the top of the guidelines range based on Aguirre-Romero's criminal history. The probation officer explained that during an interview with Garcia, she recanted the statement she previously made to police officers that Aguirre-Romero caused the injuries to their daughter, blamed the couple that was staying with them, and explained that Aguirre-Romero was a good father. The probation officer stated that Garcia reported that her daughter was developing normally and was healthy. The court then asked whether there was "[a]nything else from anyone?" The government replied that it had nothing to add, and the defense did not respond.

The court then explained that it was concerned about Aguirre-Romero's four previous deportations; his prior convictions, including for injury to a child and for drug offenses; and other incidents that did not result in convictions but about which the record contained specific facts. Mitigating factors recognized by the court included that this was Aguirre-Romero's first conviction for illegal reentry after deportation, he remained in Mexico for three years, and his family claimed to have made amends with him. The court found that a downward variance based on the age of the conviction underlying the 16-level

enhancement was not warranted. It imposed a 71-month sentence, the top of the guidelines range, to be followed by three years of supervised release. Finally, it explained that an upward variance could have been justified based on the seriousness of Aguirre-Romero's criminal record. The court again asked if there was "[a]nything else from anyone?" The government responded that it had nothing more, and defense counsel neither responded nor raised an objection.

## II

Because Aguirre-Romero did not object to the denial of his right to allocute in the district court, our review is for plain error. *See United States v. Avila-Cortez*, 582 F.3d 602, 604 (5th Cir. 2009). To establish plain error, Aguirre-Romero must show that the district court committed a clear or obvious error that affected his substantial rights. *See Puckett v. United States*, 556 U.S. 129, 135 (2009). Even if he succeeds, we will correct the error only if it seriously affects the fairness, integrity, or public reputation of the proceedings. *See id.*

## A. Right to Allocution

Aguirre-Romero contends that the district court committed a clear, obvious error in neglecting to offer him the opportunity to allocute. He asserts that, although the court directed some questions toward him, it did not invite him to speak on any subject he wished as it was required to do.

Before imposing a sentence, the district court must "address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence." FED. R. CRIM. P. 32(i)(4)(A)(ii). We have interpreted this requirement "quite literally as mandating precisely what it appears to mandate—a personal inquiry directed to the defendant." *United States v. Dickson*, 712 F.2d 952, 956 (5th Cir. 1983); *accord United States v. Magwood*, 445 F.3d 826, 829 (5th Cir. 2006). The right to allocute reflects "the

need for the defendant, personally, to have the opportunity to present to the court his plea in mitigation." *Green v. United States*, 365 U.S. 301, 304 (1961) (plurality opinion); *accord Hill v. United States*, 368 U.S. 424, 426 (1962) (noting that though there was no majority opinion in *Green*, eight justices agreed that Rule 32 "requires a district judge before imposing sentence to afford every convicted defendant an opportunity personally to speak in his own behalf"). It is not sufficient that the court simply "addresses a defendant on a particular issue, affords counsel the right to speak, or hears the defendant's specific objections to the presentence report." *United States v. Echegollen-Barrueta*, 195 F.3d 786, 789 (5th Cir. 1999) (internal quotation marks omitted). Instead, the interaction among the court, the defendant, and the prosecutor must show "clearly and convincingly that the defendant knew he had a right to speak on any subject of his choosing prior to the imposition of sentence." *Id.* (internal quotation marks omitted).

The government points out that the district court engaged Aguirre-Romero in a discussion regarding his convictions for injury to a child and his representation that he was nonetheless good father and directed several remarks toward him. However, this was plainly not sufficient to discharge the court's obligation to provide him the opportunity to allocute. *See Magwood*, 445 F.3d at 829 (explaining that the court's colloquy with the defendant regarding his behavior did not provide the defendant with an opportunity to allocute); *Echegollen-Barrueta*, 195 F.3d at 789-90; *United States v. Reyna*, 358 F.3d 344, 347 (5th Cir. 2004) (en banc). The government also points to the court's two inquiries as to whether there was "[a]nything else from anyone?" However, the second inquiry occurred after the court announced its sentence and thus could not have served as an invitation for Aguirre-Romero to allocute. *See* FED. R. CRIM. P. 32(i)(4)(A)(ii) (requiring the court to provide the defendant an opportunity to speak in mitigation of his sentence before the court imposes

the sentence); *Echegollen-Barrueta*, 195 F.3d at 789-90. Furthermore, these open-ended, general questions, not directed to any party in particular, and to which only the prosecutor responded, do not show "clearly and convincingly that [Aguirre-Romero] knew he had a right to speak on any subject of his choosing prior to the imposition of sentence." *Echegollen-Barrueta*, 195 F.3d at 789 (internal quotation marks omitted).

Accordingly, the district court did not provide Aguirre-Romero an opportunity to allocute, an error that was clear and obvious. *See United States v. Garza-Lopez*, 410 F.3d 268, 275 (5th Cir. 2005) (in determining whether the district court's error is clear and obvious, "it is enough that the error be 'plain' at the time of appellate consideration" (quoting *Johnson v. United States*, 520 U.S. 461, 467-68 (1997))); *Magwood*, 445 F.3d at 829.

## B. Defendant's Substantial Rights

Aguirre-Romero next argues that his substantial rights were presumptively affected because he was sentenced at the top of the guidelines range. The government concurs. We presume that neglecting to provide the defendant with an opportunity to allocute affects his substantial rights if the district court did not impose a sentence at the bottom of the guidelines range or if the court rejected the defense's arguments for a lower sentence. *Magwood*, 445 F.3d at 829. Because Aguirre-Romero was not sentenced at the bottom of the guidelines range—indeed, he was sentenced at the top of that range—we presume that the error affected his substantial rights. *See id.*

## C. Discretion to Correct the Error

"[W]e will ordinarily remand for resentencing if a district court commits plain error that affects a defendant's substantial rights by denying the right of allocution." *United States v. Palacios*, 844 F.3d 527, 531 (5th Cir. 2016). However, we have "decline[d] to adopt a blanket rule that once prejudice is found . . . the error invariably requires correction"; there is a "limited class of

cases" in which reversal is unwarranted. *Reyna*, 358 F.3d at 352. Whether the error necessitates reversal in a particular case is a fact-specific inquiry made based on a complete review of the record. *Avila-Cortez*, 582 F.3d at 605. Among the factors we consider are whether the defendant had a prior opportunity to allocute, whether the defendant has explained "what exactly he or she would have said during allocution that might mitigate the sentence," and whether defense counsel offered mitigating arguments on behalf of the defendant. *Palacios*, 844 F.3d at 532.

As to the first point, this was Aguirre-Romero's first opportunity to allocute and he had no prior sentencing hearing, which weighs in favor of correcting the error. *See Avila-Cortez*, 582 F.3d at 605. As to the second, Aguirre-Romero has explained what he would have said during allocution to mitigate his sentence, had he been given the opportunity. In his opening brief, he states that he would have "discussed in detail his unstable childhood, including the abuse and neglect that he and his sister suffered at the hands of their father"; "provided information about the economic hardships he had suffered in Mexico immediately prior to his return to the United States"; "addressed in much more detail the injury-to-a-child conviction and child-abuse allegations that were of so much concern to the district court"; and "addressed personal insights he had gained into his behavior, changes in that behavior, and lessons he had learned, since his last period of incarceration." In light of the district court's concerns about his child abuse conviction and questions regarding his family life, this constitutes "some objective basis" that could have influenced Aguirre-Romero's sentence. *See Magwood*, 445 F.3d at 830 (citing *Reyna*, 328 F.3d at 356 (Jones, J., concurring)); *cf. United States v. Hoover*, No. 15-30620, 2016 WL 6440382, at *3 (5th Cir. Oct. 31, 2016) (unpublished) (declining to remand for resentencing where the defendant

failed to "identify anything he would have said [during allocution] to allay [the] concerns" that the district referenced in imposing the sentence).

Finally, counsel did put forward several arguments on Aguirre-Romero's behalf, repeatedly emphasizing to the court that Aguirre-Romero remained outside of the United States for three years after he was deported, held a job, and supported his family, and counsel also highlighted the age of the conviction that increased Aguirre-Romero's offense level. And, as the government points out, much of this information was referenced in the PSR. However, the mere fact that some mitigation arguments were before the district court at sentencing does not control whether we will exercise our discretion to order resentencing. *See Palacios*, 844 F.3d at 532 ("Although the presence of [mitigation] arguments may support affirming the sentence, such statements do not preclude this court from exercising its discretion to correct the error."). Aguirre-Romero represents that he could have provided deeper, more personal insight into the arguments counsel raised and could have more fully addressed the court's concerns about his past, specifically by providing a more detailed discussion of the abuse that he suffered as a child, his prior convictions, and his financial troubles and by discussing the insights he had gained and the lessons he had learned. We agree. As the Supreme Court observed in *Green*, "The most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself." 365 U.S. at 304.

Aguirre-Romero did not have a prior opportunity to allocute, he has explained what exactly he would have said during allocution that might have mitigated his sentence, and the mitigating arguments offered by defense counsel were not sufficient to remove the prejudice he suffered. We therefore conclude that this is not one of the "limited class of cases" where reversal is unwarranted. *See Palacios*, 844 F.3d at 532.

9

## III

In sum, we conclude that the district court's failure to provide Aguirre-Romero the opportunity to allocute before sentencing amounted to plain error that affected his substantial rights, warranting our exercise of discretion to correct the error. *See Reyna*, 358 F.3d at 352-53. Accordingly, we VACATE his sentence and REMAND for resentencing.