# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-40164

United States Court of Appeals
Fif h Circuit

**FILED**

December 27, 2016

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

ANGEL RODOLFO CHAVEZ-PEREZ,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before STEWART, Chief Judge, and SMITH and DENNIS, Circuit Judges.

CARL E. STEWART, Chief Judge:

Angel Rodolfo Chavez-Perez ("Chavez-Perez") appeals his 85-month sentence for illegal reentry, arguing that the district court plainly erred by denying him the opportunity to allocute before sentencing. For the following reasons, we AFFIRM.

## I. BACKGROUND

Chavez-Perez, a Mexican national with a lengthy criminal history including multiple theft and assault convictions, was deported in 2013. In 2015, he pleaded guilty to illegal reentry in violation of 8 U.S.C. § 1326. The pre-sentence report ("PSR") determined his total offense level to be 21 and his criminal history score to be VI, resulting in a Guidelines range of 77 to 96

No. 16-40164

months. *See* U.S.S.G. §§ 2L1.2; 3E1.1. The probation officer recommended a mid-range sentence, emphasizing Chavez-Perez's repetitive and violent criminal history.

At the sentencing hearing, the district court addressed defense counsel:

> [T]his is definitely a case in which, you know, I'm kind of hard-pressed to conclude anything other than something much higher than what the minimum is . . . given not only the nature of the convictions, but also the evidence that is recited in support of my finding for the criminal history points . . . . I mean, the list goes on as far as the nature of the violence that your client has shown to be capable of.[1] And so I ask you to address the Court on his behalf.

Defense counsel then acknowledged Chavez-Perez's extensive criminal history but offered numerous reasons for a low-end Guidelines sentence. For example, counsel cited Chavez-Perez's family support.[2] Defense counsel also noted that Chavez-Perez had returned to reunite with his family at their urging because the situation in the region of Mexico where he resided was difficult, and he had nowhere else to go:

> They don't want him in Matamoros. They don't want him in Mexico. They know how the situation is over there and they themselves have requested or have talked to him and they've come into a conclusion . . . that this last time he was coming back, hoping to make it to Galveston, reside there with his family. He has [nowhere] else to go in Mexico in any way whatsoever. Very difficult for him to be over there.

Defense counsel explained that much of Chavez-Perez's criminal behavior stemmed from his history of alcohol abuse:

---

[1] The specific examples cited by the district court included aggravated assault against a peace officer, burglary, resisting arrest, robbery (in which Chavez-Perez stabbed the victim), and violence against his mother.

[2] Defense counsel stated: "My understanding from the family, my understanding from the aunt that is here supporting my client, is that they've gone past the situation. They support Mr. Chavez quite a bit in this situation."

No. 16-40164

> Mr. Chavez is not proud in any way, whatsoever, Your Honor. He probably believes from the conversations that I have had with him that a lot of it stems from substance abuse, primarily involving alcohol . . . . But under the circumstances, Your Honor, . . . we're not here to deny any type of that history or what has taken place. That is his history, it is there. He wishes it wasn't there, but we can't deny it.

Defense counsel additionally noted that most of Chavez-Perez's convictions were for misdemeanors and that he had committed no violent offenses since 2006:

> He's asking here that Your Honor simply consider the least possible sentence for him under the circumstances. Since 2006 there has [sic] been no other offenses other than illegal entry . . . . [H]e has tried very much to change his ways. The only thing that he did in this particular case, was to come back into this country illegally, hoping to re-join his family.

The district court then engaged Chavez-Perez directly, asking him whether his family understood that, by encouraging him to reenter illegally, they had subjected him to the possibility of imprisonment:

> THE COURT: [Your attorney] told me that your family was the one who was hoping to be able to get you—all the way to Galveston this time around. So, my concern is whatever sentence I order, whenever you get out, are they going to be doing the same? . . . . Were they aware that they were asking you or encouraging you to put yourself in a situation where you could potentially go to prison for 10 years?

> CHAVEZ-PEREZ: No. No, they didn't want me to come to prison though.

> THE COURT: [D]id they understand that by encouraging you to come back that you were subject to possibly as much as 10 years in prison? . . . . [G]iven the nature of all these convictions, it wouldn't be too long . . . given your problem drinking and your tendency to get violent[,] . . . eventually you were going to bring yourself to the attention of law enforcement . . . . Did they understand that?

3

No. 16-40164

CHAVEZ-PEREZ:  Yes.

THE COURT:  Okay.  So I'm concluding from that answer that after I send you to prison and you get out that they're going to say, "Well, come on.  We'll help you get there."

CHAVEZ-PEREZ:  My main purpose to come here was [t]o see my mother because she was very sick.  It's been 8 to 10 years that I haven't even seen her.  That was my reason to come here, to see her.  Therefore, I apologize to you and the Government and my past life already passed me.  Therefore, I apologize to you.

Immediately following Chavez-Perez's statement, the district court ordered that he be sentenced to 85 months' imprisonment.

Chavez-Perez appeals his sentence, arguing that the district court plainly erred when it failed to allow him the right to allocute at his sentencing hearing.  In his appellate brief, Chavez-Perez explains that if given the opportunity to allocute, he "could have": (1) "described in much more detail his family's situation and the resultant pressure he felt to return" to the United States; (2) "discussed in much more detail the difficulties, and perhaps even dangers, he faced during his time in Mexico"; and (3) "explained in much more detail about his substance abuse and how, in his view, it contributed to his criminal history, especially the assaultive offenses that were of so much concern to the district court" and "spoken about any efforts on his part, since his last assaultive offense . . . to try to stay 'clean' and to manage his anger."

## II. DISCUSSION

Chavez-Perez did not object in the district court that he was denied his right to allocute, and so we review for plain error.  *See United States v. Reyna*, 358 F.3d 344, 350 (5th Cir. 2004) (en banc).  To apply Rule 52(b)'s plain error rule in the allocution context, we first ask whether the district court (1) committed an error, (2) that is clear and obvious, and (3) that affected the defendant's substantial rights.  *Id.* (quoting *United States v. Olano*, 507 U.S.

4

No. 16-40164

725, 732 (1993)); *see also United States v. Perez*, 460 F. App'x 294, 299 (5th Cir. 2012) (per curiam). We "will 'ordinarily remand for resentencing' if a district court commits plain error that affects a defendant's substantial rights by denying the right of allocution." *United States v. Avila-Cortez*, 582 F.3d 602, 606 (5th Cir. 2009) (quoting *Reyna*, 358 F.3d at 353). However, reversal is "not automatic." *Id.* at 604. "In a limited class of cases, a review of the record may reveal, despite the presence of disputed sentencing issues, that the violation of a defendant's right to allocution does not [seriously affect the fairness, integrity, or public reputation of judicial proceedings]." *Id.* (quoting *Reyna*, 358 F.3d at 352).

## A.

Chavez-Perez argues that the district court did not issue him "a personal invitation to speak prior to sentencing on any subject of his choosing" so as to satisfy his right of allocution. We agree. "In order to satisfy Rule 32, the district court must communicate 'unequivocally' that the defendant has a right to allocute." *United States v. Magwood*, 445 F.3d 826, 829 (5th Cir. 2006) (quoting *United States v. Echegollen-Barrueta*, 195 F.3d 786, 790 (5th Cir. 1999)). The district court must make a direct, personal inquiry to the defendant, applying the rule "quite literally." *Id.* (citation omitted).

At the sentencing hearing, Chavez-Perez answered the district court's question about his family's participation in his reentry, explained his reasons for returning, and apologized to the court for having committed the instant offense. However, although Chavez-Perez and the district court engaged in a brief discussion prior to the imposition of his sentence, this is not tantamount to the district court having given him a specific and unequivocal opportunity to speak in mitigation of his sentence. *See Perez*, 460 F. App'x at 299 (determining that district court's questioning of defendant on several topics did not constitute allocution opportunity); *United States v. Legg*, 439 F. App'x 312,

5

313 (5th Cir. 2011) (per curiam) (determining that extensive discussion between district court and defendant did not constitute a "specific and unequivocal" allocution opportunity).   Rather, the district court (1) asked Chavez-Perez whether he was aware that his family was putting him in a situation where he "could potentially go to prison for 10 years"; (2) asked Chavez-Perez whether he understood the consequences of being found in the United States given the nature of his previous convictions; and (3) stated, "I'm concluding from that answer that after I send you to prison and you get out that [your family] is going to say, 'Well, come on.  We'll help you get here'"— which elicited a response from Chavez-Perez about his mother's illness. Because Chavez-Perez was never given an unequivocal opportunity to speak in mitigation of his sentence, *see Magwood*, 445 F.3d at 829, we conclude that the district court erred in failing to give Chavez-Perez an allocution opportunity, and the error was clear and obvious.

We also hold that this error affected Chavez-Perez's substantial rights. "Ordinarily, in order to establish that an error 'affects substantial rights' . . . , a defendant must establish that the error was 'prejudicial,' i.e.[,] that it 'affected the outcome of the district court proceedings.'"  *Reyna*, 358 F.3d at 350.  In cases involving the right to allocute, we presume that the defendant's substantial rights were affected if "the record reveals that the district court did not sentence at the bottom of the guideline range or if the court rejected arguments by the defendant that would have resulted in a lower sentence." *Id.* at 353.  Because Chavez-Perez was sentenced to 85 months' imprisonment, a mid-range sentence in the advisory Guidelines range of 77 to 96 months, we presume that the error affected his substantial rights.  *See Magwood*, 445 F.3d at 829; *Reyna*, 358 F.3d at 353.

No. 16-40164

B.

While we will ordinarily remand for resentencing if a district court commits plain error that affects a defendant's substantial rights by denying the right of allocution, we have "decline[d] to adopt a blanket rule that once prejudice is found under the rule stated above, the error invariably requires correction." *Reyna*, 358 F.3d at 352. Instead, we "conduct a thorough review of the record to determine . . . whether the error 'seriously affects the fairness, integrity, or public reputation of judicial proceedings,'" compelling our exercise of discretion to correct it. *Id*. at 353. Whether this court will exercise its discretion to correct the error is a "highly fact-specific" inquiry involving a range of factors. *See Avila-Cortez*, 582 F.3d at 605. In most allocution appeals, "to prevail, defendants will have to show some objective basis that would have moved the trial court to grant a lower sentence; otherwise, it can hardly be said that a miscarriage of justice has occurred." *Reyna*, 358 F.3d at 356 (Jones, J., concurring).

Here, Chavez-Perez does not provide mitigating evidence that, "given the entirety of the transcript," likely would have moved the district court to grant a more lenient sentence. *See United States v. Neal*, 212 F. App'x 328, 332 (5th Cir. 2007) (per curiam) (declining to correct the error where the defendant "assert[ed] only conclusionally [that] he was not given an opportunity to discuss his 'family, background, his conduct in prison, his activities during his months of successful supervised release, or other areas'" but failed "to allege any specific facts which, given the entirety of the transcript, . . . likely would've convinced the district court to levy a more lenient sentence"). In his appellate brief, Chavez-Perez asserts that if given the opportunity to allocute, he would have elaborated on three general topics raised by defense counsel during the sentencing hearing: (1) his family situation and the resultant pressure he felt to return to the United States; (2) the difficulties, "and perhaps even dangers,"

7

he faced in Mexico; and (3) how his substance abuse "contributed to his criminal history, especially [his] assaultive offenses" and "any efforts on his part . . . to try to stay 'clean' and to manage his anger." However, Chavez-Perez offers no specific facts or additional details that he would include in his elaboration of these topics.

Chavez-Perez's proffered statements fail to demonstrate an "objective basis" that would have moved the court to grant a lower sentence. *See Reyna*, 358 F.3d at 356 (Jones, J., concurring). Most of the arguments Chavez-Perez claims he would have made were raised either by him or defense counsel at the sentencing hearing,[3] and Chavez-Perez does not provide any new mitigating information in his appellate brief. Thus, because the district court had before it the mitigating information Chavez-Perez claims he would have provided if given the chance to allocute, and the court calculated his sentence having considered that information, we cannot say that a miscarriage of justice occurred. *See Magwood*, 445 F.3d at 830 (declining to correct the error where defense counsel argued mitigating information, the district court weighed that information, and the defendant failed to state what his mitigating statement would have been); *see also United States v. Zaleta*, 458 F. App'x 369, 372–73 (5th Cir. 2012) (per curiam) (declining to correct the error where all of the issues on which the defendant claimed he would have expounded were addressed by defense counsel at sentencing, and the defendant failed to identify what "new or additional facts he would have offered" that would have affected the district court's analysis).

Furthermore, the statements Chavez-Perez offers on appeal are unlikely to have moved the district court to impose a lower sentence because, in

---

[3] Chavez-Perez's argument regarding his efforts to "stay 'clean'" and "manage his anger" was not raised at the sentencing hearing and is discussed in the next paragraph of this opinion.

calculating Chavez-Perez's sentence, the district court gave significant, if not decisive, weight to his repetitive history of violent crime. The district court raised this concern both when it spoke to defense counsel and to Chavez-Perez directly.[4] However, neither Chavez-Perez's proposed arguments regarding his family situation nor the dangers he faced in Mexico address this concern. And although it is possible Chavez-Perez could have persuaded the district court to reduce his sentence by demonstrating that he had taken steps to manage his problems with substance abuse and anger,[5] the statement offered in his appellate brief does not indicate that he has actually taken any such actions. Rather, Chavez-Perez ambiguously states that he "could . . . have spoken about *any efforts* on his part, since his last assaultive offense . . . , to try to stay 'clean' and to manage his anger" (emphasis added). This vague assertion is not sufficient to permit our exercise of discretion to correct the error. *See Magwood*, 445 F.3d at 830; *Neal*, 212 F. App'x at 332; *cf. Avila-Cortez*, 582 F.3d at 606 (correcting the error where the defendant explained in his appellate brief that he had a "specific strategy to address his problem with alcohol").

---

[4] During the sentencing hearing, the district court stated to defense counsel:

I'm kind of hard-pressed to conclude anything other than something much higher than what the minimum [sentence] is . . . given not only the nature of the convictions, but also the evidence that is recited in support of my finding for the criminal history points . . . . I mean, the list goes on as far as the nature of the violence that your client has shown to be capable of.

The district court later stated to Chavez-Perez: "[G]iven the nature of all these convictions, it wouldn't be too long . . . given your problem drinking and your tendency to get violent[,] . . . eventually you were going to bring yourself to the attention of law enforcement."

[5] Although it is possible, it is not necessarily likely. The district court was apparently unmoved by defense counsel's argument that Chavez-Perez had committed no offenses since 2006 (other than illegal reentry) or by defense counsel's assertion that Chavez-Perez "has tried very much to change his ways."

No. 16-40164

## III. CONCLUSION

For the foregoing reasons, the sentence of Defendant-Appellant Angel Rodolfo Chavez-Perez is AFFIRMED.[6]

---

[6] We are aware that in Dkt. No. 14-40279, *United States v. Palacios*, also up on appeal, we held that the district court's failure to provide the defendant the right to allocute amounted to reversible error.  In contrast to the instant case, we determined that the final prong of the plain error test was satisfied because the defendant established that a miscarriage of justice had occurred.  Because the defendant in *Palacios* demonstrated an objective basis that would have moved the district court to grant a lower sentence, *see Reyna*, 358 F.3d at 356 (Jones, J., concurring), we therefore exercised our discretion to correct the error.