# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
April 3, 2019

Lyle W. Cayce
Clerk

No. 18-50254

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

JOSE SANTOS FIGUEROA-COELLO,

Defendant–Appellant.

Appeal from the United States District Court
for the Western District of Texas

Before KING, SMITH, and WILLETT, Circuit Judges.

PER CURIAM:

Appellant asks us to overturn the district court's within-Guidelines sentence because he was denied the chance to speak at his sentencing hearing. We agree that Appellant successfully demonstrated reversible plain error that affected the fairness of his sentence. We thus REVERSE the district court's judgment and REMAND for resentencing.

**I**

Appellant Jose Santos Figueroa-Coello, a citizen of both Honduras and Mexico with a criminal history, pleaded guilty to illegally reentering the United States. *See* 8 U.S.C. § 1326. His proper sentencing range, as determined based on his presentence report, was 21 to 27 months. At the sentencing hearing, the following exchange took place:

No. 18-50254

> THE COURT:     Prior to sentencing, do you have anything that you'd like to say on behalf of your client?
>
> MS. PADILLA PAXTON [Jose's attorney]:     Yes, Your Honor. Mr. Figueroa-Coello is a citizen of both Honduras and Mexico. He came to the United States in order to make a better living. He can make about $600 a week in construction here in the United States. He was last removed in 2014. Although he does not minimize his past conduct, we would point out that his issue stems from alcohol abuse. He was on his way to Houston this time to reunite with his family. And he's asking for a sentence as lenient as possible.

The Government argued for a top-of-the-range sentence of 27 months based on Jose's prior conviction for aggravated robbery. The district court never addressed Jose or asked whether he had anything to say. Instead, the court agreed with the Government and sentenced Jose to 27 months in prison plus three years supervised release. Jose appealed, arguing that the district court reversibly erred by failing to ask him whether he wished to speak at his sentencing hearing.

## II

As Jose failed to object at trial, we review for plain error. *United States v. Reyna*, 358 F.3d 344, 348–50 (5th Cir. 2004) (en banc). Relief under the plain-error standard "will be difficult to get, as it should be." *United States v. Dominguez Benitez*, 542 U.S. 74, 83, n. 9 (2004). To receive it, the appellant must show the lower court's action (or lack thereof) (1) deviated from unwaived and established legal rules, (2) was "clear or obvious, rather than subject to reasonable dispute," and (3) affected his substantial rights. *Puckett v. United States*, 556 U.S. 129, 135 (2009). This court then has discretion to correct the error if (4) it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id*.

No. 18-50254

## III

There is little dispute here regarding the first three prongs of the *Puckett* test, which serve to establish the existence of plain error. The parties quarrel over prong four, which concerns whether we ought to exercise our discretion to vacate and remand.

## A

Jose has demonstrated a "clear or obvious" deviation from unwaived legal rules, as prongs (1) and (2) require. *Id.* The rule is crystal clear: Before sentencing, the court must "address the defendant personally" and allow him to offer any mitigating information affecting his sentence. FED. R. CRIM. P. 32(i)(4)(A)(ii). This address must be in the form of a "personal inquiry" directed at the defendant himself. *United States v. Magwood*, 445 F.3d 826, 829 (5th Cir. 2006) (quoting *United States v. Dickson*, 712 F.2d 952, 956 (5th Cir. 1983)). It cannot merely consist of a generalized query, or a bounded request for a description or statement from the defendant. *United States v. Palacios*, 844 F.3d 527, 532 (5th Cir. 2016) (finding that no opportunity to allocute exists unless defendant receives "an explicit opportunity to speak freely"). Here, the district court did not give Jose a chance to speak at his sentencing hearing. In fact, the judge did not directly address Jose at all before pronouncing sentence. And the Government rightly concedes that the trial court erred.

Regarding prong three of *Puckett*, the Government also concedes that the district court's failure to follow Rule 32 affected Jose's substantial rights, as he was sentenced at the very top of his Guidelines-prescribed range. To show the violation of substantial rights, an appellant must ordinarily show that the court's plain error "caused him prejudice." *Puckett*, 556 U.S. at 133. We "presume prejudice when a defendant shows a violation of the right [to allocute] and the opportunity for such violation to have played a role in the district court's sentencing decision." *Reyna*, 358 F.3d at 351–52. And we have

recognized that such prejudice exists when a district court both plainly violates Rule 32 and hands down a sentence any higher than the bottom of an appellant's within-Guidelines range, as it did here. *Palacios*, 844 F.3d at 531; *Reyna*, 358 F.3d at 352-53.

In sum, the parties do not dispute that the lower court deviated from legal rules in a clear and obvious manner that substantially prejudiced Jose and violated his rights. We agree and hold that the first three prongs of plain-error review have been met. The district court plainly erred in a manner that affected Jose's substantial rights.

**B**

The closer question here centers on *Puckett*'s final prong: Does this error somehow mar the fairness, integrity, or public reputation of our judicial system? "[T]his is a highly fact-specific inquiry." *United States v. Avila-Cortez*, 582 F.3d 602, 605 (5th Cir. 2009). We have adopted a well-reasoned rule that not all instances of plain error merit remand. *Reyna*, 358 F.3d at 352 ("We decline to adopt a blanket rule that once prejudice is found . . . the error invariably requires correction").

The denial of a defendant's right to speak at sentencing does not necessarily transmogrify a just hearing into an unjust one. Allocution is not a fundamental requirement of fair judicial proceedings such that a "complete miscarriage of justice" results when it is not allowed. *Magwood*, 445 F.3d at 830 (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). If the appellant had a prior opportunity to allocute, or if the appellant fails to show "some objective basis that would have moved the trial court to grant a lower sentence," we will decline to correct the error. *United States v. Chavez-Perez*, 844 F.3d 540, 545 (5th Cir. 2016) (quoting *Reyna*, 358 F.3d at 356 (Jones, J., concurring)). Otherwise, we ordinarily remand for resentencing when the right of allocution is denied. *Reyna*, 358 F.3d at 352. We will examine our precedents

to determine whether this case is a member of the "limited class" in which we will refrain from exercising our discretion. *Id.* at 352.

## 1

A defendant's right to allocute is satisfied only by "a specific and unequivocal opportunity to speak in mitigation of his sentence." *Palacios*, 844 F.3d at 531. Mere discussion with the defendant's counsel, or even with the defendant himself, is not enough. *Id.* Rather, the court must interact directly with the defendant "in a manner that shows clearly and convincingly that the defendant knew he had a right to speak on any subject of his choosing prior to the imposition of sentence." *Magwood*, 445 F.3d at 829 (quoting *United States v. Echegollen-Barrueta*, 195 F.3d 786, 789 (5th Cir. 1999) (citation omitted)).

When defendants have several prior clear chances to allocute, we raise an eyebrow at claims that a subsequent deprivation of this right requires remand. *Reyna*, 358 F.3d at 352–353. The appellant in *Reyna* was offered an opportunity to allocute at two prior sentencing hearings before the same district judge. *Id.* at 346–47, 352. And in the second sentencing hearing, the judge clearly warned Reyna that violating his supervised release would mean a drastic alteration to his sentence. *Id.* at 346, 352–53. Yet even when the en banc court declined to remand Reyna's case, it recognized these were "unusual facts." *Id.* at 353.

As previously established, the sentencing hearing here was Jose's first, and the judge never interacted directly with him until after sentencing. This factual difference means that our conclusion in *Reyna* does not apply. Jose did not have a prior opportunity to allocute, and thus remand is still an appropriate remedy.

## 2

But we also do not remand cases for plain error involving allocution when the appellant does not offer "mitigating evidence that . . . likely would have

moved the district court to grant a more lenient sentence." *Chavez-Perez*, 844 F.3d at 545. Even this class of cases, however, is moderately cabined. The defendant must fail to present any "objective basis" upon which the district court would probably have changed its mind, had he been allowed to speak. *Id.* This much is evident from our holding in *Magwood*. In that matter, it was dispositive that the defendant neither "furnish[ed] any information about what he would have allocuted to that might have mitigated his sentence," nor demonstrated willingness to reform. *Magwood*, 445 F.3d at 830. In other words, the defendant failed to show a "miscarriage of justice" requiring remand. *Id.*

However, even if the defendant provides some information as to what he would have allocuted, we may find it insufficient to trigger remand. In *Chavez-Perez*, the defendant only stated in his appellate brief that, if allowed to allocute:

> he "could have": (1) "described in much more detail his family's situation and the resultant pressure he felt to return" to the United States; (2) "discussed in much more detail the difficulties, and perhaps even dangers, he faced during his time in Mexico"; and (3) "explained in much more detail about his substance abuse and how, in his view, it contributed to his criminal history, especially the assaultive offenses that were of so much concern to the district court" and "spoken about any efforts on his part, since his last assaultive offense . . . to try to stay 'clean' and to manage his anger."

*Chavez-Perez*, 844 F.3d at 543. We faulted the defendant for providing "no specific facts or additional details" regarding these hypothetical efforts, and thus found no "objective basis" for overturning his sentence despite the trial court's plain error. *Id.* at 545. Additionally, the defendant in *Chavez-Perez* had a "repetitive history of violent crime." *Id.* at 546; *see United States v. Chavez-Perez*, No. 1:15-CR-00290 (S.D. Tex. Jan. 22, 2016), ECF 19 at 6-18. And the judge stated that the defendant's extensive criminal history directly led him to

pronounce his high sentence. *Id.* at 546; 542 ("I'm kind of hard-pressed to conclude anything other than something much higher than what the minimum is . . . given not only the nature of the convictions, but also the evidence that is recited in support of my finding for the criminal history points"). Because the defendant's proffered allocution failed to directly address these concerns, our court found no need to remand for plain error. *Id.* at 546.

On the other hand, a sufficiently detailed and specific description of mitigating facts to be offered at allocution will likely establish a need for remand. We retrieve this rule from our prior decisions in *Palacios* and *Avila-Cortez*. In the former case, the defendant's prospective allocution was "lengthy":

> [H]e apologizes to society, the victims of his crimes, and his family—particularly his young son. He explains the financial difficulties that drove him to his "horrible decision" and asserts that he takes responsibility for his actions. He additionally describes the efforts he has made to rehabilitate himself while incarcerated and details his past charitable and volunteer work.

*Palacios*, 844 F.3d at 530. In like, but less extensive, fashion, the defendant in *Avila-Cortez* explained he would have told the trial court "that he had a specific strategy to address his problem with alcohol and that he was making plans to return permanently to Mexico with his wife." *Avila-Cortez*, 582 F.3d at 606. Given the amount of specificity that allocution would have added to counsel's "somewhat cursory" statements, our court remanded both cases. *Palacios*, 844 F.3d at 533.

Unlike *Magwood*'s unrepentant defendant, Jose has provided additional mitigating facts on appeal. He states in his brief that, if allocution had been allowed,

> [he] would have explained that he only returned to the United States to earn a better living to support his children. He would have explained that his mother has been diagnosed with Alzheimer's disease, and that he is motivated to return to

Honduras to help her. He would have explained that he has struggled with alcohol abuse in the past, but that he is willing to address this problem and maintain sobriety. [He] would have expressed remorse for his crime. And he would have explained why a sentence at the top of the Guidelines range was not necessary to deter future crimes: because he has children, siblings, and parents in Honduras and skills to make a life for himself there.

Jose's simple provision of this information means he has at least passed the *Magwood* threshold. But his recitation is also not quite "lengthy" and "thorough" enough to reach the heights of *Palacios*. 844 F.3d at 530, 532.  In substance, Jose's prospective allocution sits somewhere on a spectrum between *Chavez-Perez* and *Avila-Cortez*. As we found a basis for remand in the latter and not the former, we must determine whether Jose offered enough specificity and detail to make remand appropriate.

While his counsel referenced the economic reason for Jose's illegal entry, he did not explain that Jose's aim was to support his family. This is an additional detail, but likely not enough on its own to move the trial court to lessen Jose's sentence. The court's only stated ground for imposing its top-of-range sentence was aversion to Jose's prior aggravated robbery, which this statement would not have addressed.

Jose next mentions his mother's recent Alzheimer's diagnosis and casts that as his reason to return to Honduras. Yet this ground is cast into doubt by an element of his presentence report (PSR), which states that "[t]he defendant was not sure of his parent's health status." *United States v. Figueroa-Coello*, No. 2:17-CR-00899-JCZ (W.D. Tex. Apr. 3, 2018), ECF 23 at 7. Our circuit has not yet determined what we should do when the defendant's PSR mentions an element of a proffered allocution. Going forward, if the PSR directly contradicts a portion of that allocution, we presume that it will not likely provide an objective ground to lessen his sentence. However, if a defendant merely mentions information contained in the PSR as part of his allocution, we will

not make this presumption. Instead, items referenced in the PSR but not referenced by counsel will be treated as "specific facts or additional details" that may persuade the trial court, and thus may constitute grounds for remand. In this instance, Jose's PSR contradicts his briefed allocution statement about his knowledge of his mother's health. We find that this detail provides no objective basis upon which the district court would have curtailed his sentence, and thus on its own does not warrant remand.

In contrast, Jose's openness to maintaining sobriety goes beyond his counsel's mere statement that Jose's past crimes were in part due to alcohol abuse. Jose's expressed willingness to change in a manner relating to the root of his prior criminal activity—the trial court's reason for his higher sentence— may have led to a lower sentence, especially when coupled with his remorse. We have previously recognized statements of remorse and sincere willingness to change as a possible "objective basis" for lessening a sentence. *See Palacios*, 844 F.3d at 530. So this proffered statement weighs in favor of remand.

The final portion of Jose's allocution—his intent to return to Honduras and make a living with his family—could also be grounds for a sentence reduction. If a defendant truly means to leave America at the next available opportunity and never illegally return, the district court could find it unlikely that he will reoffend if granted a lighter sentence.

On balance, we hold that allowing allocution in this case would give "detail, expression, [and] expansion" to Jose's plea for a lessened sentence that his counsel simply did not. *Avila-Cortez*, 582 F.3d at 606; *see also Green v. United States*, 365 U.S. 301, 304 (1961) ("The most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself"). In fact, Jose's final two intended remarks are quite like those of the defendant in *Avila-Cortez*, who explained that he would have told the trial court "that he had a specific strategy to address his problem

9

with alcohol and that he was making plans to return permanently to Mexico with his wife." 582 F.3d at 606. In that case, we exercised our discretion to remand.

We are not persuaded by the Government's claim that counsel presented essentially the same facts as Jose would have, had he been able to allocute. This formulation of our standard disregards the specificity allocution provides. The right of allocution exists because counsel may not be able to provide "the same quantity or quality of mitigating evidence" as the defendant at sentencing. *Id*. Jose's intended allocution here is markedly different than his counsel's statements to the court.

Accordingly, we are also unconvinced by the Government's assertion that Jose has presented no further evidence that would affect the district court's ground for sentencing. In *Chavez-Perez* we found that the defendant's long and sordid criminal history required a rebuttal that he never offered. 844 F.3d at 546. But Jose has committed comparatively few crimes. And he is unlikely to commit more if he follows through on his intent to maintain sobriety and leave promptly for his home of Honduras. He is far more like the defendant in *Avila-Cortez*, which (as previously mentioned) we remanded. *See id*. at 603. Though the district court did state that "there's no excuse of a prior offense of aggravated robbery . . . [in] our country," Jose's prospective allocution provided just enough additional detail that could lead a reasonable judge to reconsider his stringent sentence.

## IV

Jose was not allowed to say his piece before the district court, as Rule 32 requires. This may have saddled him with a longer-than-needed sentence. Remand would correct this plain error and ensure fairness. We REVERSE the judgment of the district court and REMAND for resentencing.