# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
June 3, 2022

Lyle W. Cayce
Clerk

No. 21-60940
Summary Calendar

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

LEONEL NAZARIO RAMOS-GUERRERO,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:14-CR-80-1

Before KING, COSTA, and HO, *Circuit Judges*.

PER CURIAM:*

Leonel Nazario Ramos-Guerrero appeals his sentence stemming from the revocation of the supervised release he had been serving following a conviction for illegal reentry into the United States. He argues that his

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

sentence is substantively unreasonable. For the following reasons, we AFFIRM.

In the underlying criminal case from 2015, Leonel Nazario Ramos-Guerrero, a Mexican national, was convicted in the Southern District of Mississippi for illegal reentry into the United States in violation of 8 U.S.C. § 1326(a)(2) and (b)(2). The conviction, his third for that same offense, resulted in a sentence of 50 months' incarceration followed by three years supervised release. The terms of Ramos-Guerrero's supervised release included requirements that he "shall not commit another federal, state or local crime" and that he "shall not re-enter the United States without written permission of the Secretary of Homeland Security." After Ramos-Guerrero was released from prison, he was deported back to Mexico and his term of supervised release began on September 7, 2018.

In August 2020, Ramos-Guerrero was arrested in San Antonio, Texas, and charged with illegal reentry into the United States (for which he was ultimately sentenced to 27 months' imprisonment). After that arrest in Texas, Ramos-Guerrero faced a petition in the Southern District of Mississippi to revoke his supervised release for his 2015 illegal reentry conviction. That petition was based on allegations that he violated the terms of his supervised release by reentering the United States without permission and thereby committing another criminal offense.  At his revocation hearing, Ramos-Guerrero admitted the violations and his supervised release was revoked. The district court found that the violations constituted Grade B and Grade C violations; therefore, based on his criminal history category of V, his guideline sentencing range was 18-24 months' incarceration.

The district court then listened to an allocution from Ramos-Guerrero. Ramos-Guerrero acknowledged that he was "guilty of coming back," apologized, and explained the circumstances surrounding his return

in this instance. Specifically, he said that previously he had "never tried to stay in Mexico" and that, while he had committed to remain following his most recent deportation, he was later "picked up by the cartel and got beat up and left for dead, broke [his] jaw, and as a result of that, [had] PTSD now." Following the attack, he became afraid that if he remained in Mexico, he "was going to die or maybe put [his] mom and dad in some problems, because if [the cartel] came looking for [him], [he] was staying with [his] mom and dad." Those fears prompted his decision to return.

Following Ramos-Guerrero's allocution, his counsel acknowledged the recommendations of the advisory guideline range and Sentencing Commission policy statements to run the sentence consecutive to Ramos-Guerrero's sentence in Texas on the new illegal reentry conviction. Counsel then requested that the court run the revocation sentence concurrent to the Texas sentence, either in part or in total, given the length of that sentence.

The district court sentenced Ramos-Guerrero to 18 months' imprisonment, to run consecutive to the Texas sentence. In doing so, the court considered several statutory factors from 18 U.S.C. § 3553 and found the following factors relevant: "The need to afford adequate deterrence to criminal conduct, the need to protect the public, and the need to control the offender's conduct." The court further noted that Ramos-Guerrero "has not been deterred from engaging in criminal conduct and continuing to return illegally." While the court was "sympathetic and understands why [Ramos-Guerrero] may feel an impulse to do what he did," that sympathy did not "change the fact that [Ramos-Guerrero's actions were] against the law in this country" and had "happened repeatedly." The district court also noted that Ramos-Guerrero's criminal history category of V was "significant" and "reflect[ed] a repeated defiance of the laws of this country." The court lastly stated that, in fashioning its sentence, it "carefully considered the advisory policy statement" of the guidelines and "the appropriate factors" from 18

No. 21-60940

U.S.C. §§ 3553(a) and 3582. Following the issuance of the sentence, neither party objected. Ramos-Guerrero timely appeals.

Ramos-Guerrero challenges only the substantive reasonableness of his sentence. "A [revocation] sentence is substantively unreasonable if it (1) does not account for a factor that should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors." *United States v. Winding*, 817 F.3d 910, 914 (5th Cir. 2016) (alteration in original) (quoting *United States v. Warren*, 720 F.3d 321, 332 (5th Cir. 2013)). Because Ramos-Guerrero did not object to the substantive reasonableness of his sentence before the district court, we review for plain error. *See United States v. Fraga*, 704 F.3d 432, 439 (5th Cir. 2013). "To prevail on plain error review, a defendant must show that an error occurred, that the error was clear or obvious, and that the error affected his substantial rights." *United States v. Walker*, 742 F.3d 614, 616 (5th Cir. 2014). Even then, "the decision to correct the forfeited error is within the court's sound discretion, which will not be exercised unless the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.*

Ramos-Guerrero is unable to clear that high bar here. The district court issued Ramos-Guerrero a sentence that was within the guidelines range. Further, Ramos-Guerrero has no complaint with the calculation of the guidelines range. "Sentences within a properly-calculated guidelines range enjoy a presumption of reasonableness." *United States v. Diaz Sanchez*, 714 F.3d 289, 295 (5th Cir. 2013). In addition, the relevant policy statement from the Sentencing Commission states that "[a]ny term of imprisonment imposed upon the revocation of . . . supervised release *shall* be ordered to be served consecutively to any sentence of imprisonment that the defendant is serving[.]" U.S.S.G. § 7B1.3(f). As stated above, Ramos-Guerrero must rebut that presumption by pointing to an unreasonable failure by the district

court to consider the correct factors or an unreasonable balancing of the factors. He cannot. The district court was guided by the correct statutory factors, such as the need for deterrence, and made no error in finding that the issued within-guidelines sentence was necessary to hopefully deter Ramos-Guerrero from what would be his fifth illegal reentry into the United States. And it was not unreasonable nor an error for the district court to follow the clear dictates of the Sentencing Commission by having said sentence run consecutive to Ramos-Guerrero's other sentence.

To demonstrate unreasonableness, Ramos-Guerrero points to the fact that his return was motivated by the violence he suffered at the hands of a cartel in Mexico and his fear for his family. The district court explicitly considered that countervailing factor, and indeed stated it was "sympathetic" to what Ramos-Guerrero had faced and understood "why he may feel an impulse to do what he did." The district court simply found that factor did not outweigh the need for deterrence and the unambiguous guidance of the Sentencing Commission. *See United States v. Chavez-Perez*, 844 F.3d 540, 546 (5th Cir. 2016), *cert. denied*, 137 S. Ct. 2215 (2017) (finding that neither "proposed arguments regarding [the defendant's] family situation nor the dangers he faced in Mexico" would necessarily affect a sentence where the district court placed heavy weight on repeated criminal violations). It is "the sentencing judge [who] is in a superior position to find facts and judge their import[.]" *United States v. Campos-Maldonado*, 531 F.3d 337, 339 (5th Cir. 2008). Especially given the sharper view of the case the district court enjoyed from its vantage point, it was not error, clear or otherwise, for the court to strike the balance it did—a balance that faithfully followed a path well-lit by statute and the Sentencing Guidelines and reached a destination that was not only within the guidelines range but at its low end.

For the foregoing reasons, the judgment of the district court is AFFIRMED.