# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 16, 2022

Lyle W. Cayce
Clerk

No. 21-51150

United States of America,

*Plaintiff—Appellee*,

*versus*

Kevin Lavern Johnson, II,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 6:21-CR-26-1

Before Richman, *Chief Judge*, and Elrod and Oldham, *Circuit Judges*.
Per Curiam:[*]

Kevin Lavern Johnson, II and his partner-in-crime stole four guns and a safe. He was later arrested after leading police on a high-speed car chase through residential neighborhoods. Johnson pleaded guilty to possessing a stolen firearm and was sentenced to 110 months in prison. Johnson raises

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-51150

three challenges to his sentence. The first two are meritless, but the third necessitates a new sentencing hearing.

I.

A.

Kevin Lavern Johnson, II and Emilio Terrazas were smoking marijuana with three women when one of the women noticed a firearm was missing from the living room entertainment center. She confronted Johnson and Terrazas. They responded by stealing three more firearms and a safe, shoving the woman against the wall, and pointing a gun at her head while commanding her to "shut up." Two witnesses overheard the robbery, and one chased Johnson and Terrazas as they fled to their car. But the witness backed off when one of the robbers pointed a gun at him. The owner of the apartment and the firearms—a soldier who was away from home for military exercises—later identified the stolen guns as a Galil Ace AK-47, a Palmetto State Armory AR-15, a Century Arms AK-47, and a Sig Sauer 1911 pistol. Several photos appeared on social media of Johnson with the Galil.

Three weeks later—on February 8, 2021—Johnson and Terrazas robbed a convenience store in Killeen, TX. The same day, an FBI task force commenced an investigation and discovered that Terrazas was hiding out in a camper. They set up surveillance in the area. And when Terrazas realized he was surrounded by police, he called Johnson and asked Johnson to rescue him. Johnson agreed. He borrowed his girlfriend's SUV, picked up Terrazas, and led agents on a high-speed chase of up to 90 mph through residential neighborhoods. During the chase an agent identified Johnson in the back seat of the SUV, holding the stolen Galil.

The SUV ultimately reached a dead end, jumped a curb, and stopped. Then Johnson and Terrazas fled on foot. Terrazas was found hiding behind

2

a shed in a residential area. Johnson escaped. He left the Galil behind an unknown residence and paid a "stupid white boy" to retrieve it later.

When Johnson was later located and arrested, he initially denied committing any robberies. But after being confronted with the social media photos, he admitted to participating in the apartment robbery, picking up Terrazas in his girlfriend's SUV, and possessing the Galil during the high-speed chase.

A Waco grand jury charged Johnson with possessing a stolen firearm, the Galil, in violation of 18 U.S.C. § 922(j). Johnson pleaded guilty.

## B.

The Presentence Report ("PSR") determined that U.S.S.G. § 2K2.1 provided the offense level for a violation of 18 U.S.C. § 922(j). But because the firearm Johnson possessed was used in connection with a robbery, the PSR followed the cross-reference provision of § 2K2.1(c)(1) to the robbery guideline, § 2B3.1. Consequently, it assigned Johnson a base offense level of 20 and assessed a total of 7 levels in enhancements under § 2B1.3(b). The PSR also assessed a two-level enhancement for obstruction of justice under § 3C1.2 because Johnson recklessly created a substantial risk of death or serious bodily injury while fleeing from law enforcement. With a three-level reduction for acceptance of responsibility, Johnson's total offense level was 26. And the PSR assigned him to criminal history category II. This created an advisory guidelines range of 70–87 months' imprisonment.

Johnson objected to the PSR calculations. First, he asserted that the cross-reference to the robbery guideline should not apply because there was no evidence that he used the Galil in connection with a robbery. Second, Johnson challenged the two-level enhancement for reckless endangerment. He asserted that because he was merely a passenger in the fleeing SUV, he

couldn't have created a substantial risk of harm to anyone. The district court overruled both objections.

At sentencing, the court adopted the findings and conclusions in the PSR without change, advised Johnson that it was considering an upward variance, and continued the hearing to give Johnson time to prepare. Prior to the reconvened hearing, Johnson filed a memorandum in which he made various arguments in mitigation of his sentence: the absence of his father during his childhood, his youth at the time of the offense, his experience being sexually molested as a child, his bipolar disorder and other mental health issues, his good grades in high school, and his close family connections. He attached several letters from family members and a former teacher in support of his memo.

At the reconvened sentencing hearing, Johnson's attorney presented testimony from Johnson's father but made no arguments of his own. The court concluded that an upward variance was appropriate. Without affording Johnson the opportunity to allocute, the court sentenced Johnson to 110 months' imprisonment followed by three years of supervised release.

Johnson timely appealed, challenging his sentence based on the court's guidelines calculations and violation of his allocution right. We have jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291. Because the guidelines challenges were preserved, "we review the district court's interpretation and application of the guidelines de novo and its factual findings . . . for clear error." *United States v. Perryman*, 965 F.3d 424, 426 (5th Cir. 2020) (quotation omitted). "A factual finding is not clearly erroneous if it is plausible in light of the record as a whole," and we find clear error "only if a review of the record results in a definite and firm conviction that a mistake has been committed." *United States v. Zuniga*, 720 F.3d 587, 590 (5th Cir. 2013) (quotation omitted). Plain-error review applies to the

unpreserved allocution violation. *United States v. Brooker*, 858 F.3d 983, 985 (5th Cir. 2017).

## II.

Johnson first argues that § 2K2.1(c)(1)'s cross-reference to the robbery guideline should not apply. We disagree.

The applicable offense level for possession of a stolen firearm is found at § 2K2.1. But § 2K2.1(c)(1) instructs that a cross-reference to the guideline for a different offense should instead apply if the cross-reference increases the offense level and "the defendant used or possessed any firearm or ammunition cited in the offense of conviction in connection with the commission or attempted commission of another offense[.]" U.S.S.G. § 2K2.1(c)(1). The phrase "in connection with" is defined as "facilitated, or had the potential of facilitating." U.S.S.G. § 2K2.1, cmt., n.14(A). Thus, the cross-reference is applicable if the defendant used or possessed the stolen firearm and such use or possession facilitated, or had the potential to facilitate, the commission or attempted commission of another offense.

The district court found that Johnson's possession of the stolen Galil during the apartment robbery facilitated, or had the potential of facilitating, the commission of the apartment robbery. Johnson asserts this was clear error because (1) he could not use a gun he had not yet stolen to facilitate the same robbery in which he stole it, and (2) there is no evidence that he "pointed [the Galil] at the head of one of the females." He urges that for the § 2K1.2(c)(1) cross-reference to apply, his possession of the stolen firearm had to precede, and be independent from, the cross-referenced robbery.

The Government counters with *United States v. Armstead*, 114 F.3d 505 (5th Cir. 1997). There, the Armsteads were convicted under 18 U.S.C. § 922(u) for stealing firearms from a licensed firearms dealer. *Id.* at 505. We upheld the district court's application of the sentencing enhancement under

§ 2K2.1(b)(5),[1] which provided a four-level increase if the defendant "used or possessed" the stolen firearms "in connection with another felony offense." *Ibid.* Even though the defendants came into possession of the firearms during a burglary, we nevertheless held that the burglary was "another felony offense" that occurred "in connection with" the defendants' firearm possession. *Id.* at 510–13.

It is true that *Armstead* did not involve the specific cross-reference provision at issue here, § 2K2.1(c)(1). But the operative text in the two cross-references is similar. *Cf. United States v. Mitchell*, 166 F.3d 748, 756 (5th Cir. 1999) (analyzing the similarity and holding § 2K2.1(c)(1) "mandates a closer relationship between the firearm and the other offense than that required for § 2K2.1(b)(5)" (quotation omitted)). And the application note to § 2K2.1 explicitly says that § 2K2.1(c)(1) applies

> . . . in a case in which a defendant who, during the course of a burglary, finds and takes a firearm, even if the defendant did not engage in any other conduct with that firearm during the course of the burglary . . . because the presence of the firearm has the potential of facilitating . . . another offense.

U.S.S.G. § 2K2.1, cmt., n.14(B).

Of course, Application Note 14(B) discusses burglary. But Johnson offers no compelling reason—or any argument at all—why the same logic doesn't apply to the robbery context. If anything, this case provides a clear example of how a stolen gun can be used to facilitate the same robbery in which it was stolen: *After* Johnson and Terrazas stole and possessed all four firearms, they then stole a safe, shoved one of the women against the wall while pointing a gun at her head, and fended off the witness who tried to

---

[1] The identical provision was later moved to § 2K2.1(b)(6).

thwart their getaway by threatening him with a gun. The Galil thus clearly facilitated, or had the potential of facilitating, the apartment robbery. And that is all the Guidelines require.

### III.

Next, Johnson argues that the § 3C1.2 obstruction enhancement was improper because he was merely a backseat passenger during the high-speed chase of up to 90 mph through residential neighborhoods. Section 3C1.2 provides for a two-level increase in a defendant's offense level if, in fleeing from a law enforcement officer, "the defendant recklessly created a substantial risk of death or serious bodily injury to another person." U.S.S.G. § 3C1.2. "[T]he flight [must be] related to the offense the defendant is convicted of violating." *United States v. Gould*, 529 F.3d 274, 276 (5th Cir. 2008). And the Guideline commentary clarifies that a "defendant is accountable for [his] own conduct and for conduct that the defendant aided or abetted, counseled, commanded, induced, procured, or willfully caused." U.S.S.G. § 3C1.2, cmt., n.5.

Johnson does not dispute that *Terrazas's* actions would qualify for the obstruction enhancement. That is because "leading police officers on a high-speed chase . . . by itself create[s] a substantial risk of serious injury." *United States v. Lee*, 989 F.2d 180, 183 (5th Cir. 1993). Likewise, because Johnson possessed the Galil during that chase, there is a sufficient nexus between the flight and his underlying conviction for possession of the stolen Galil. *See United States v. Witt*, 187 F. App'x 406, 407–08 (5th Cir. 2006) (per curiam) (citing *United States v. Southerland*, 405 F.3d 263, 268 (5th Cir. 2005)).

Instead, Johnson argues that a mere backseat passenger does not deserve the enhancement. *See United States v. Iracheta-Garces*, 2001 WL 1485742 (5th Cir. Nov. 7, 2001) (per curiam) (so holding). But Johnson was no mere backseat passenger. Instead, Johnson's involvement in the chase is

closer to *United States v. Terrazas*, 815 F. App'x 767, 770 (5th Cir. 2020) (per curiam), where we upheld the district court's finding of reckless endangerment for a passenger in a high-speed chase who ignored the driver's repeated instructions to get out of the vehicle and who fled on foot when the high-speed pursuit ended—indicating that he was an "active participant throughout the pursuit" and "not merely a passenger." Or *United States v. Lima-Rivero*, 971 F.3d 518, 520 n.1 (5th Cir. 2020), where we determined that the enhancement was appropriate because the defendant continued the chase on foot and hid from police, thereby aiding and abetting his coconspirator's flight. Johnson agreed to pick up Terrazas to help his partner-in-crime avoid arrest, provided the getaway car, held a stolen firearm in the car during the high-speed chase, continued to flee on foot after the car chase ended, hid his weapon, and successfully evaded arrest. Thus, the district court's reckless-endangerment finding was not clearly erroneous, and its application of the Guidelines was manifestly correct.

IV.

Finally, Johnson argues that the district court committed reversible error by denying him the opportunity to allocute at sentencing. The parties agree that this claim is reviewable under the familiar four-part plain-error standard. *See Puckett v. United States*, 556 U.S. 129 (2009). The parties also agree that Johnson meets the first three prongs. The only dispute is on the fourth.

The fourth plain-error prong asks whether the "failure to correct the error would seriously affect the fairness, integrity or public reputation of judicial proceedings." *United States v. Sanchez-Hernandez*, 931 F.3d 408, 410 (5th Cir. 2019) (quotation omitted). We have held that, "we will ordinarily remand for resentencing" where a district court commits plain error by denying the right to allocution. *United States v. Chavez-Perez*, 844 F.3d 540,

543 (5th Cir. 2016); *see also Reyna*, 358 F.3d at 352–53 (similar); *United States v. Avila-Cortez*, 582 F.3d 602, 606 (5th Cir. 2009) (similar). That said, allocution errors aren't "fundamental defect[s] that inherently result[] in a complete miscarriage of justice," *United States v. Magwood*, 445 F.3d 826, 830 (5th Cir. 2006) (quotation omitted), so reversal is "not automatic," *Avila-Cortez*, 582 F.3d at 604. Instead, we "conduct a thorough review of the record" to determine whether to exercise our discretion to correct the error. *Reyna*, 358 F.3d at 353; *see also Avila-Cortez*, 582 F.3d at 605 ("[T]his is a highly fact-specific inquiry.") "Among the factors we consider are [A] whether the defendant had a prior opportunity to allocute, [B] whether the defendant has explained what exactly he or she would have said during allocution that might mitigate the sentence, and [C] whether defense counsel offered mitigating arguments on behalf of the defendant." *Aguirre-Romero*, 680 F. App'x at 296 (quotation omitted); *see also Palacios*, 844 F.3d at 532 (outlining the same factors).

## A.

We first consider whether Johnson had earlier opportunities to allocute. In *Reyna*, for example, the defendant had two allocution opportunities in prior proceedings before the same judge. 358 F.3d at 352–53. And at the second proceeding, the judge warned Reyna that he would automatically receive a one-year sentence if he ever breached the supervised release. *Ibid.* Reyna breached his terms of release. And the court did exactly what it had warned it would but denied Reyna an opportunity to allocute at the final hearing. Based on the "unusual" posture of the case, we decided that the error didn't seriously affect the fairness, integrity, or public reputation of judicial proceedings. *Id.* at 353. By contrast, where the defendant did not have earlier opportunities to allocate, the first factor generally favors resentencing. *See United States v. Lister*, 229 F. App'x 334 (5th Cir. 2007); *Figueroa-Coello*, 920 F.3d at 265–66 (considering whether

defendant had "several prior clear chances to allocute"); *Aguirre-Romero*, 680 F. App'x at 296 (same).

The only words Johnson uttered during the entire reconvened hearing were "Yes, sir"—in response to the district court's questions whether Johnson understood why he was there and whether he was prepared to proceed. *Cf. Avila-Cortez*, 582 F. 3d at 605 (reversing where the only time defendant spoke was when he twice said "Yes, sir"). This is obviously a stark difference from the situation in *Reyna*. And it weighs in favor of resentencing. *See, e.g., Palacios,* 844 F.3d at 530, 532 ("[T]he district court allowed [defendant] the opportunity to speak with regard to acceptance of responsibility," thus going beyond "barely addressing the defendant at all." (quotation omitted)); *Aguirre-Romero*, 680 F. App'x at 294 ("[Defendant] engaged in a colloquy with the court regarding his convictions for injury to a child, representing that he had the support of his family, he did not hurt his daughter, he believed he was pleading guilty only to endangering a child, the other people living with them were responsible for his daughter's injuries, and he was a loving father."); *cf. Avila-Cortez*, 582 F.3d at 607 ("[Defendant] was never given any opportunity whatsoever to speak to the court, which is unlike any of the cases in which we have declined to exercise our discretion to correct the error.").

## B.

Next we consider what evidence the defendant would have included in his allocution. As we have said elsewhere, defendants are ordinarily required "to show some objective basis that would have moved the trial court to grant a lower sentence." *Chavez-Perez*, 844 F.3d at 545 (quotation omitted). The proposed allocution need not be particularly "lengthy" or "extensive," but it must be "sufficiently detailed and specific." *Figueroa-Coello*, 920 F.3d at 266–67 (comparing defendant's proposed allocution with

the lengthy allocution in *Palacios* and the less extensive allocution in *Avila-Cortez*—both of which were sufficient to trigger remand); *cf. United States v. Neal*, 212 F. App'x 328, 332 (5th Cir. 2007) (declining to correct the error where defendant asserted "conclusionally he was not given an opportunity to discuss his 'family, background, his conduct in prison, his activities during his months of successful supervised release, or other areas'"); *Chavez-Perez*, 844 F.3d at 545 (similarly conclusory). In *Magwood*, for example, the defendant did "not furnish *any* information about what he would have allocuted to that might have mitigated his sentence," so we affirmed despite the denial of allocution. 445 F.3d at 830 (emphasis added).

Johnson, unlike Magwood, provides a detailed and specific description of the mitigating facts he would have offered had he been afforded the opportunity to speak. Johnson explains in his brief that he would have expressed remorse; explained his childhood trauma, mental health issues (including bipolar disorder, ADHD, and oppositional defiant disorder), and intent to return to psychiatric care (which had helped in the past); underscored his good grades and family support; and articulated his plan to finish high school, attend college or trade school, and find a job in which he could help others. Johnson's proposed allocution was supported by a five-page sentencing memorandum and six letters from family members and a former teacher. Particularly important are Johnson's remorse, desire to seek psychiatric care, and plan to return to school. *See Figueroa-Coello*, 920 F.3d at 268 ("We have previously recognized statements of remorse and sincere willingness to change as a possible 'objective basis' for lessening a sentence."). Thus, Johnson's proposed allocution is adequately specific and "constitutes 'some objective basis' that could have influenced [his] sentence." *Aguirre-Romero*, 680 F. App'x at 298 (quoting *Magwood*, 445 F.3d at 830).

No. 21-51150

C.

Finally, Johnson's attorney made no mitigating arguments at sentencing, and Johnson's father only spoke about a small subset of Johnson's proposed mitigation considerations. "The right of allocution exists because counsel may not be able to provide the same quantity or quality of mitigating evidence as the defendant at sentencing." *Figueroa-Coello*, 920 F.3d at 268 (quotation omitted); *see Green v. United States*, 365 U.S. 301, 304 (1961) ("The most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself."). That said, whether counsel made mitigating arguments at sentencing is still relevant to whether an uncorrected allocution error would seriously affect the fairness, integrity, or public reputation of judicial proceedings. In many of our allocution cases, counsel spoke in favor of mitigation during the sentencing hearing,[2] and we evaluated whether the defendant's proposed allocution would have added something over and above what their attorney had already presented. *E.g.*, *Chavez-Perez*, 844 F.3d at 545 ("Most of the arguments Chavez-Perez claims he would have made were raised either by him or defense counsel at the sentencing hearing, and

---

[2] *See, e.g.*, *Magwood*, 445 F.3d at 830 ("The district court heard arguments from Magwood's counsel, who put forward mitigating factors[.]"); *Avila-Cortez*, 582 F.3d at 606 ("During Avila-Cortez's sentencing, his counsel gave general mitigation arguments in an attempt to secure a sentence at the low end of the Guidelines range."); *Palacios*, 844 F.3d at 533 ("Palacios's defense counsel made a few, somewhat cursory, mitigating statements on Palacios's behalf[.]"); Chavez-*Perez*, 844 F.3d at 542 ("Defense counsel . . . offered numerous reasons for a low-end Guidelines sentence."); *Aguirre-Romero*, 680 F. App'x at 296 ("[C]ounsel did put forward several arguments on Aguirre-Romero's behalf."); *Figueroa-Coello*, 920 F.3d at 263–64 (counsel offered various mitigation arguments and "ask[ed] for a sentence as lenient as possible"); *United States v. Villegas*, 2022 WL 2073831, at *2 (5th Cir. June 9, 2022) ("Most of the arguments Villegas claims he would have made were raised either by those letters or defense counsel at the sentencing hearing, and Villegas does not provide any new mitigating information in his appellate brief." (quotation omitted)).

No. 21-51150

Chavez-Perez does not provide any new mitigating information in his appellate brief."). When defense counsel makes *no* mitigating arguments on behalf of the defendant, the defendant's allocution is all the more important.

Here, Johnson's counsel made no argument in mitigation; made no reference to the mitigation facts included in the sentencing memorandum; and, other than presenting the testimony of Johnson's father, did nothing to oppose the court's proposed upward variance. Thus, any mitigation argument Johnson might have made during allocution would necessarily have been more fulsome than that provided by counsel. *See Palacios*, 844 F.3d at 532 ("[Defendant's proposed] statement is specific, thorough, and gives detail, expression, and expansion to the statements provided by defense counsel." (quotation omitted)).

The Government counters that Johnson's arguments were nevertheless before the district court via the sentencing memorandum, the PSR, and his father's presentation. That might have made a difference had the district court demonstrated it read and considered the memorandum. *Compare Palacios*, 844 F.3d at 533 ("[A]s in *Avila-Cortez*, the record in this case does not indicate that the district court contemplated, or subsequently rejected, defense counsel's mitigating statements."), *with Villegas*, 2022 WL 2073831, at *2 ("[M]ost of the arguments Villegas claims he would have made were raised either by those letters or defense counsel . . . , [and] the record shows that the sentencing judge read the letters." (quotation omitted)); *see also Figueroa-Coello*, 920 F.3d at 267 ("[I]tems referenced in the PSR but not referenced by counsel will be treated as 'specific facts or additional details' that may persuade the trial court, and thus may constitute grounds for remand."). The district court did not do so, however, so a new sentencing hearing is warranted.

VACATED and REMANDED.