# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 6, 2024

Lyle W. Cayce
Clerk

No. 23-10142

United States of America,

*Plaintiff—Appellee*,

*versus*

Joe Luis Guzman,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:16-CR-91-1

_____

Before Stewart, Clement, and Ho, *Circuit Judges*.

Per Curiam:[*]

Joe Luis Guzman appeals his 24-month revocation sentence. Because Guzman has not shown plain error in the district court's decision, we AFFIRM.

## I.

On June 3, 2021, Guzman began a three-year term of supervised release after four years of federal incarceration. A condition of Guzman's

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

release was that he "not commit another federal, state, or local crime." But less than two months after his release, Guzman was named as a suspect for assault with a deadly weapon. According to police records, on July 25, 2021, Guzman broke into the residence of his ex-girlfriend—who was pregnant with his child—and repeatedly punched, kicked, and pistol-whipped her, pointed a gun at her head, and threatened to kill her. Then, on or about August 12, 2021, Guzman again broke into his ex-girlfriend's home, but she was not there. So, Guzman sent her text messages with photos of himself inside the home and threatened to harm her and burn the residence to the ground. Guzman was arrested while trying to flee the premises. The door to the house had been kicked in, and a red gas can was found perched on a window ledge.

Based on these events, Guzman's probation officer petitioned for a violator's warrant. And based on Guzman's August actions, Guzman was named in a three-count indictment in Texas state court for (1) burglary of a habitation with intent to commit arson, (2) assault with a deadly weapon, and (3) burglary of a habitation with intent to commit assault. In November 2022, Guzman pled guilty to a reduced charge of burglary of a habitation—a second-degree felony—on count three of the indictment. He was sentenced to five years in prison, and the State agreed to waive prosecution on the other two counts of the indictment. Guzman's federal probation officer filed an addendum to the petition in December 2022 updating the federal district court on Guzman's guilty plea.

Guzman's revocation hearing occurred on February 2, 2023 and proceeded as follows. To start the hearing, the district court asked the government to clarify whether it was "proceeding on both the petition and the addendum," to which the government responded that the petition and addendum "came out of the same course of conduct in one single incident." It appears that this statement was incorrect. As explained above, the petition

concerned two separate incidents—the July 25 assault and the August 12 burglary—while the addendum concerned only the latter event. Moreover, the facts surrounding the August 12 burglary were laid out solely in the petition; the addendum stated only that Guzman had pled guilty to burglary of a habitation. Nonetheless, based on the government's statement, the district court asked, "So we can proceed then only on the addendum?" to which the government responded, "Yes." The court then asked Guzman how he pled to the allegation that he "violated a state law of burglary of a habitation, in violation of Texas Penal Code Section 30.02(c)(2), a second degree felony," and Guzman pled "True." When the court asked the government if it had anything else to present to the court, the government responded, "Nothing in addition to the addendum" but noted that "the underlying offense conduct [was] extraordinarily violent." The court sentenced Guzman to 24 months in prison, Guzman's counsel stated that she had no objections, and the hearing was adjourned. Guzman now appeals his revocation sentence.

## II.

Because Guzman did not object to his revocation sentence below, we review only for plain error. *United States v. Fuentes*, 906 F.3d 322, 325 (5th Cir. 2018). To satisfy this "difficult" standard, Guzman bears the burden of demonstrating (1) "an error" (2) that is "clear or obvious, rather than subject to reasonable dispute" and (3) that affected Guzman's "substantial rights," which means it "affected the outcome of the district court proceedings." *Puckett v. United States*, 556 U.S. 129, 135 (2009) (citations and quotation marks omitted). Even if Guzman satisfies all three prongs, we have "the *discretion* to remedy the error—discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (cleaned up).

No. 23-10142

### III.

The Sentencing Guidelines set forth "three grades of probation and supervised release violations." U.S.S.G. § 7B.1.1(a). As relevant here, "Grade A Violations" include "conduct constituting" (1) "a federal, state, or local offense punishable by a term of imprisonment exceeding one year that [] is a crime of violence," or (2) "any other federal, state, or local offense punishable by a term of imprisonment exceeding twenty years." *Id.* § 7B.1.1(a)(1). "Grade B Violations" are "conduct constituting any other federal, state, or local offense punishable by a term of imprisonment exceeding one year." *Id.* § 7B.1.1(a)(2). For an individual like Guzman with a Criminal History Category of IV, the Guidelines call for a revocation sentence of 24 to 30 months for a Grade A violation and 12 to 18 months for a Grade B violation. U.S.S.G. § 7B.1.4(a).

Guzman contends that the district court plainly erred because it applied a Grade A sentence (24 months) to a Grade B violation (burglary of a habitation). To be sure, Guzman pled guilty to a second-degree felony, which carries a maximum punishment of 20 years' incarceration under Texas law and would therefore qualify as a Class B violation under the Guidelines. *See* Tex. Penal Code § 12.33(a) ("An individual adjudged guilty of a felony of the second degree shall be punished by imprisonment in the Texas Department of Criminal Justice for any term of not more than 20 years or less than 2 years."). But "[t]he grade of violation does not depend upon the conduct that is the subject of criminal charges or of which the defendant is convicted in a criminal proceeding." U.S.S.G. § 7B.1.1(a) cmt. n.1. "Rather, the grade of the violation is to be based on the defendant's actual conduct." *Id.* And Guzman's "actual conduct" constitutes a Grade A violation even though he pled to a lesser offense.

4

No. 23-10142

Guzman does not dispute that his August 2021 conduct, as set out in the revocation petition, would constitute a Grade A violation for revocation purposes. Instead, Guzman argues that because the government elected to proceed only on the addendum, not the petition, none of the facts from the petition were properly before the district court and, in any event, they were not sufficiently reliable revocation evidence. In Guzman's view, the district court could only base its revocation sentence on the factual information contained in the addendum, which stated in full:

> On November 28, 2022, Mr. Guzman appeared before the Honorable Mike Thomas in Criminal District Court No. 4, Tarrant County, Texas, and pled guilty to the charge of Burglary of a Habitation (in violation of Texas Penal Code § 30.02(c)(2), a Second Degree felony) in Case No. 1696478D. Mr. Guzman was sentenced to 5 years imprisonment in the Institutional Division of the Texas Department of Criminal Justice for the felony offense.

But plain error exists only when the mistake is "clear or obvious, rather than subject to reasonable dispute." *Puckett*, 556 U.S. at 135. And here, reasonable minds could differ as to the effect of the district court's exchange with the government at the start of the revocation hearing. To be sure, Guzman's suggestion—that the government "chose to proceed on the Addendum *only* at revocation," abandoning any reliance on the allegations in the petition—is one possible interpretation of that colloquy. But another reasonable understanding of the discussion is that the government considered the petition and addendum to be part-and-parcel, so by telling the court it could proceed "only on the addendum," the government believed it was proceeding on Guzman's guilty plea to burglary of a habitation (as set forth in the addendum) *including* the factual allegations supporting that conviction (even though those facts were set forth in the petition). Indeed, it appears that the district court was operating under the latter interpretation

5

since the court later stated that it was "adopt[ing] the statements contained in the Supervised Release Petition" before finding that Guzman had violated his supervised release and sentencing him to 24 months in prison.

As for Guzman's argument that the factual information contained in the petition was not sufficiently reliable revocation evidence, he again cannot show plain error because he has pointed to no binding "precedent directly supporting [his] contention." *United States v. Miller*, 406 F.3d 323, 330 (5th Cir. 2005). Instead, he points to two unpublished decisions: *United States v. Perez*, 460 F. App'x 294 (5th Cir. 2012) and *United States v. Standefer*, No. 95-50043, 1996 WL 46805 (5th Cir. Jan. 15, 1996). But we explained in *United States v. Foley* that *Perez* and *Standefer* stand only for the proposition that "a district court errs when it relies on a *bare allegation* of a new law violation contained in a revocation petition," *i.e.*, where the petition "refers to the mere fact of an arrest—[such as] the date, charge, jurisdiction and disposition—without corresponding information about the underlying facts or circumstances regarding the defendant's conduct that led to the arrest." 946 F.3d 681, 686–87 (5th Cir. 2020) (emphasis added) (cleaned up). There is no plain error where, as here, the petition "contains other indicia of reliability, such as the factual underpinnings of the conduct giving rise to the arrest." *Id.* at 687.

The bottom line is that Guzman failed to take issue with the way his revocation hearing was conducted when he had the chance. The very "purpose of plain error review is to instill in litigators the importance of preparing adequately before appearing in the trial court and, as necessary, clarifying issues to that court. Timely, adequate objections allow the trial court to rule in the first instance and, if necessary, correct itself without spawning an appeal . . . of [a potential] error that was unwittingly committed, because not brought to [the district court's] attention." *United States v. Chavez-Hernandez*, 671 F.3d 494, 497 (5th Cir. 2012). Moreover, "[c]lose

calls do not cut it for plain-error review" because "[b]y definition, a close call cannot be the obvious or plain error a defendant needs to show when asserting an error he did not give the district court a chance to fix." *United States v. McNabb*, 958 F.3d 338, 341 (5th Cir. 2020).

AFFIRMED.